### No. 13,969

First Circuit

### RACCA

v.

### PARKERSBURG RIG & REEL CO.

(May 3, 1927. Opinion and Decree.)
(June 7, 1927. Rehearing Refused.)

(*Syllabus by the Editor.*)

1. Louisiana Digest—Master and Servant —Par. 154, 160j.

The provisions of the Workmen's Compensation Law No. 20 of 1914 as amended by Act 85 of 1926, Section 8,

Subsection 1(d)17 having reference to hernia are legislative measures of evidence for the guidance of courts in determining whether a real traumatic hernia, resulting from the application of force, directly to the abdominal wall, has been sustained or not. They do not modify the law that a real traumatic hernia is compensable.

2. **Louisiana Digest—Master and Servant —Par. 154, 160j.**

In the presence of satisfactory proof that an injury was caused by sudden effort or severe strain and was not of slow development, the reason for the provisions contained in the Workmen's Compensation Act No. 20 of 1914 as amended by No. 85 of 1926, Section 8, Subsection 1(d) 17, are met and satisfied and the injury is compensable.

3. **Louisiana Digest—Master and Servant —Par. 154—Laws—Par. 68.**

The legislature in passing Act 85 of 1926 amending the Workmen's Compensation Act No. 20 of 1914, did not intend to make the attendance of a licensed physician within forty-eight hours after an injured employee receives a hernia an essential prerequisite to the recovery of compensation when the situation is such that there is no physician to go on the errand.

Appeal from the District Court, Parish of Calcasieu. Hon. Thomas F. Porter, Judge.

Action by James Racca against Parkersburg Rig and Reel Company.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

Hobert R. Stone, of Lake Charles, attorney for plaintiff, appellee.

McCoy & Moss, of Lake Charles, and Gordon Boswell, of New Orleans, attorneys for defendant, appellant.

ELLIOTT, J. Appeal from the District Court, Parish of Calcasieu. Thomas F. Porter, Judge. Suit under Act 20 of 1914, Section 8, Subdivision 17 (Amd. Act 85 of 1926), to recover compensation on account of a hernia.

James Racca alleges that on July 26, 1926, he sustained a hernia on the left side, while working for and in the service of the defendant, Parkersburg Rig & Reel Company. That he was receiving at the time a daily wage of five dollars. He claims as compensation 65 per cent of his daily wage for twenty-six weeks and $250.00 in addition with which to pay for an operation.

Defendant admits that plaintiff was in its employment at the wage stated at the time, but denies that plaintiff was injured as he claims while in its service and denies that he is entitled to compensation on said acoucnt. According to plaintiff he received a real traumatic hernia while working for defendant at the time stated, sat down immediately and communicated the fact to Taylor Childress, defendant's foreman in charge of the work in which plaintiff was engaged. Plaintiff is corroborated by Elroy Johnson, a fellow workman, present at the time. Defendant's foreman admits that plaintiff made a complaint, but says he told him that he had strained himself. But according to plaintiff and Elroy Johnson, plaintiff made it known to Mr. Childress in a way that he was bound to understand that he had been ruptured. The district judge was satisfied that information was given as stated by the plaintiff and we agree with the judge a quo that the information was such that there could be no mistake on the part of the foreman as to the nature of the injury that plaintiff had received. The plaintiff went home and did not return for work next

morning. His testimony is that he did not return because he could not and sent word by Mr. Johnson to Mr. Tabor, defendant's manager, informing him of his injury and the nature thereof and that he could not return to work on account of same. Mr. Johnson testifies that he communicated plaintiff's message to Mr. Tabor next morning, and informed Mr. Tabor that plaintiff had ruptured himself the evening before. Mr. Tabor admits that he received the message. The law provides that, "Where there is real traumatic hernia, resulting from the application of force, directly to the abdominal wall, éither puncturing or tearing the wall, compensation will be allowed." It then proceeds to say that all other cases will be considered as of slow development and not compensable, being a disease rather than an accidental injury, unless conclusive proof is offered that the hernia was immediately caused by such sudden effort or severe strain: First, that the descent of the herina immediately following the cause; second, that there was severe pain in the hernial region; third, that there was such prostration that the employee was compelled to cease work immediately; fourth, that the above facts were of such severity that the same was noticed by the claimant and communicated to the employer within forty-eight hours after the occurrence of the hernia; fifth, that there was such physical distress that the attendance of a licensed physician was required within forty-eight hours after the occurrence of the hernia."

The evidence meets the four requirements first mentioned. As for the fifth the plaintiff did not send for nor consult a physician within forty-eight hours following the injury and defendant argues from this that his hernia is not compensable under the law. The purpose of

all that is said following the provision that a real traumatic hernia will be compensated is to prevent imposition. The Civil Code, Articles 18 and 19, furnishes the rule for their understanding and application. The injury was received late in the evening, just before quitting time and plaintiff testifies that next morning his side hurt him so bad that he could not walk, could not stand on his feet, could not drive his car, that it was four or five days before he got on his feet. He further stated:

"Q. During these days, till you went to see Mr. Tabor were you able to walk around or were you in bed?

"A. Not the first four or five days I wasn't."

We understand from this answer and from previous answers concerning what he did when he reached home the night he was injured that he went to bed, laid down and remained in that position for the time stated, before getting up. This fact appears in the way stated and also circumstantially, because nobody saw the plaintiff until August 3, when Mr. Tabor met him in the road near his house on his way to see Mr. Tabor and get the amount due him on acount of the work he had done. He received his pay and Mr. Tabor asked him if he didn't want to go and see a doctor and offered to take him to see one, but plaintiff declined, stating he would see the doctor himself next morning, and he did see Dr. Watkins next morning. Questioned why he didn't see a doctor sooner, plaintiff says that he was disabled from sending for one; that he didn't have any money, that he had no way to go and couldn't go very well, and didn't have anybody else to go. Dr. Watkins corroborates plaintiff very convincingly as to the recent injury. He found plaintiff with an old hernia on his right side and a recent one

on his left side. That medical treatment within forty-eight hours was not necessary; that rest is what plaintiff needed; the thing for plaintiff to do was to go to bed and rest; that if he had been called that is what he would have had him do; that an operation should be performed but not immediately; the thing was to get him off his feet and let the hernia fall back into his abdomen, etc.

According to the evidence plaintiff did just what the doctor would have had him do if called within forty-eight hours after the injury. The petition alleges and defendant states in its brief that it is about seven miles from plaintiff's residence 'to Lake Charles, the nearest point where a physician could be obtained. It was seven or eight days after the injury before plaintiff went to see Dr. Watkins. He went, however, the next day after receiving his pay check from defendant.

Plaintiff's evidence as to his inability to go or send for a physician any sooner than was done is not contradicted.

Those provisions commencing with, "All other cases will be considered as of slow development and not compensable, being a disease rather than an accidental injury, unless conclusive proof is offered, etc., are legislative measures of evidence for the guidance of courts in determining whether a real traumatic hernia, resulting from the application of force, directly to the abdominal wall, etc., has been sustained or not. They do not modify the law, that a real traumatic hernia is compensable. And in the presence of satisfactory proof that an injury was caused by sudden effort or severe strain and was not of slow development, the reason for these provisions are met and satisfied. To hold otherwise would be in some instances unreasonable. If a man

be stricken with a real traumatic hernia, such as the law defines, at a time when he is alone, of such severity that he cannot walk and nobody calls within forty-eight hours, it matters not how much a physician may be required; the attendance cannot be had; it is impossible, and it is easy to conceive of instances when such attendance cannot be procured; no matter how great the need. It is not to be supposed that the legislature intended, in the absence of an unequivocal provision in the law to that effect, that the attendance of a licensed physician must be sought within forty-eight hours as an essential pre-requisite to compensation when the situation is such that there is nobody to go on the errand.

Defendant cites in its original brief the case of Rosario vs. Heller Bros., decided by the Supreme Court of New Jersey, construing and applying an enactment in New Jersey similar to our own and in a supplemental brief the case of McPhee vs. McGinty Co., decided by the Supreme Court of Colorado in the construction and application of a similar law in the State of Colorado. We are satisfied from the evidence in this case that plaintiff is not imposing on the defendant. That his claim for compensation is based on a hernia of the kind defined in our law and received in the way alleged in his petition. We think to refuse him compensation under the circumstances for no reason except that no doctor was sent for within forty-eight hours following his injury would be to understand and apply the law erroneously. The judgment appealed from is in our opinion correct. Defendant urges in its brief that the $250.00 claimed by plaintiff for undergoing an operation should not be allowed. The district judge has provided for that matter properly. No good reason appears

for any change in the decree in that respect. Judgment affirmed. Defendant and appellant to pay the cost in both courts.