LINDSEY *v.* INGALLS SHIPBUILDING CORP., et al.

Jan. 4, 1954

No. 38941 47 Adv. S. 27 68 So. 2d 872

*Merle F. Palmer,* Pascagoula, for appellant.

*White & White,* Gulfport, for appellees.

KYLE, J.

This case is before us on appeal by J. C. Lindsey from a judgment of the Circuit Court of Jackson County in favor of the Ingalls Shipbuilding Corporation and the American Mutual Liability Insurance Company, its insurance carrier, affirming an order of the Mississippi Workmen's Compensation Commission denying the appellant's claim for compensation under the Mississippi Workmen's Compensation Act for an alleged accidental injury arising out of and in the course of his employment.

The record shows that the appellant was employed by the Ingalls Shipbuilding Corporation as a ship fitter, and that he sustained the injury complained of on Monday, June 9, 1952, while he was engaged in helping to remove some heavy brackets from a bulkhead. On the hearing before the attorney-referee the appellant testified that, while he was lifting and helping to remove the brackets, he experienced a severe pain in the stomach and imme-

diately thereafter felt a bulge to the right of the navel. It was then about thirty minutes before quitting time. The appellant's foreman was not on duty that day, but the appellant reported his injury to another foreman who came through the boat about that time, and the appellant told him that he needed to go to first aid. The foreman said, "I will see if I can get you to first aid." The appellant did not see the foreman again; and when quitting time came, the appellant went to his home.

The appellant testified that when he reached his home he was still suffering severe pain, and about five o'clock he requested his wife to call Dr. Minkler, the family physician. Dr. Minkler was not in his office, and the appellant's wife was advised by the office attendant that the doctor would be out of his office for a week. The appellant remained in bed until the following Monday. He then went back to the shipyard and told his foreman that he had been injured and that it was necessary for him to see a doctor. He was sent immediately to a first aid station, and then to the company hospital, where he was examined by two of the company doctors and was told that he had a hernia.

The record shows that the plant was operated only five days during the week, and that the appellant did not work on Saturday or Sunday. Neither of the company doctors was on duty at the hospital on Saturday or Sunday, except in cases of emergency. However, there was usually a first aid attendant on duty at the hospital on those days.

The findings of fact by the attorney-referee were to the effect that the appellant had sustained an accidental injury arising out of and in the course of his employment, and that the injury was a rupture or a hernia. The attorney-referee stated that it was shown by a preponderance of the evidence:

"(a) That the descent or protrusion of the hernia or rupture immediately followed as the result of sudden

effort, severe strain, or the application of force to the abdominal wall;

"(b) That there was severe pain in the region of the hernia or rupture;

"(c) That there has been no descent or protrusion of the hernia or rupture prior to the accident for which compensation is claimed;

"(d) That the physical distress resulting from the descent or protrusion of the hernia or rupture was noticed immediately by claimant, and communicated to his employer within a reasonable time."

But the attorney-referee found that: "It was not shown by a preponderance of the evidence that the physical distress following the descent or protrusion of the hernia or rupture was such as to require the attendance of a licensed physician or surgeon within five (5) days after the injury for which compensation is claimed, but to the contrary, the claimant testified that the descent or protrusion was noticed immediately on June 9th but that he was not attended by a licensed physician or surgeon until June 16th." And the attorney-referee held that Lindsey's hernia was not compensable.

The attorney-referee's order disallowing Lindsey's claim was affirmed by the full Commission on November 5, 1952. The claimant thereupon appealed to the circuit court and the circuit court affirmed the order of the Compensation Commission.

The question presented for our decision on this appeal is whether the Commission and the circuit court were justified in holding that the appellant had failed to sustain the burden of proof relative to the fifth requirement of Section 6998-12, Code of 1942 (Section 8 (f), Chapter 354, Laws of 1948, as amended by Section 6, Chapter 412, Laws of 1950).

Section 6998-12, Code of 1942, provides that, "In all cases of claims for hernia, it shall be shown by a preponderance of the evidence:

" * * * *

"5. That the physical distress following the descent or protrusion of the hernia or rupture was such as to require the attendance of a licensed physician or surgeon within five (5) days after the injury for which compensation is claimed. Postoperative hernias shall be considered as original hernias."

It should be noted that the statute does not require that the claimant prove that he was actually attended by a physician or surgeon within five days after the injury. ██ ██ The statute only requires that the claimant prove that the physical distress following the descent of the hernia was such as to require the attendance of a physician or surgeon within five days. The word "require" is defined in Webster's New International Dictionary as meaning: "To need; to be under a necessity; as, man requires to feed or to be fed; a fact requires to be stated." The word is also defined as meaning: "To demand or exact as necessary or appropriate; hence to want; to need; call for." It is in this sense, we think, that the word was used in the above mentioned statute.

Only a few states have such statutory requirements as are contained in the above mentioned statute relating to the proof of hernia claims; and there are only a few reported cases in which the question that we have here has been discussed.

But, in the case of Dorval v. United Piece Dye Works, (1936), 15 N. J. Mis. R. 21, 189 A. 62, the New Jersey court had under consideration a statutory requirement which was very similar to the fifth requirement of Section 6998-12 of our own code. And the facts in that case were very similar to the facts in the case that we now have before us. In the Dorval case a judgment of dismissal had been entered in the Workmen's Compensation

Bureau on a claim petition alleging hernia, the judgment of dismissal having been based upon the commissioner's finding that the petitioner had failed to sustain the burden of proof relative to a compliance with the fifth requirement of the statutory provisions contained in Section 2, paragraph 11, subdivision (x), of the Workmen's Compensation Act of New Jersey (Comp. St. Supp. 1924, par. *** 236—11, subd. (x), amended by P. L. 1931, c. 279, p. 704, N. J. St. Annual 1931, par. *** 236—11, subd. (x)), namely, "that there was such physical distress that the attendance of a licensed physician was required within twenty-four hours after the occurrence of the hernia."

The evidence in the Dorval case showed that the employee had sustained his injury while engaged in lifting a barrel; that he felt a sudden pain in the right groin while so engaged, and that he thereupon walked some fifteen or twenty feet to a toilet and noticed a lump in his right groin; that he reported the occurrence to his foreman; and then for about two hours he engaged in light work until his regular quitting time. After quitting work, he walked about two blocks to his home. Upon reporting for work the next day, he visited the mill clinic and was told by the nurse in charge to take it easy and return the following day when the doctor would be there. He resumed light work and was attended by the mill doctor some thirty-nine hours after the accident.

The court in its opinion reversing the decision of the bureau said: "The fact that the employee actually reported to the clinic for treatment, in the light of surrounding circumstances and after consideration of all the testimony, is * * * persuasive evidence that his physical distress was such that the attendance of a licensed physician was required within the statutory period. He, in fact, sought such assistance. The statute does not use the word 'obtained,' it pointedly employs 'required,' which implies necessity, and doubtless for the very good reason that a situation might arise where the

necessity for a physician's services might be extreme and yet the circumstances conceivably preclude his actual attendance within the required time.''

In the case of Racca v. Parkersburg Rig and Reel Co., 6 La. App. 532, the Louisiana Court of Appeals held that the legislature in passing Act 85 of 1926, amending the Workmen's Compensation Act No. 20 of 1914, did not intend to make the attendance of a licensed physician within forty-eight hours after an injured employee receives a hernia an essential prerequisite to the recovery of compensation when the situation is such that there is nobody to go on the errand. The Court in its opinion in that case said: ''We are satisfied from the evidence in this case that plaintiff is not imposing on the defendant. That his claim for compensation is based on a hernia of the kind defined in our law and received in the way alleged in his petition. We think to refuse him compensation under the circumstances for no reason except that no doctor was sent for within forty-eight hours following his injury would be to understand and apply the law erroneously.''

In the case of Williams Mfg. Co. et al. v. Walker, 206 Ark. 392, 175 S. W. 2d 380, the Arkansas Court had under consideration the provisions of the Arkansas Workmen's Compensation Law, Acts 1939, Act No. 319, Sec. 13 (e), relating to the proof of hernia claims which included a requirement that the employee show ''(5) That the physical distress following the occurrence of the hernia was such as to require the attendance of a licensed physician or surgeon within forty-eight (48) hours after such occurrence.'' In that case it appeared that the appellee, working as a laborer for the appellant, Williams Manufacturing Company, caught with a cant hook a rolling log, which was moving at such rapid speed that it gave the appellee a severe jerk. The appellee immediately reported his injury to his foreman and at noon went to see Dr. O. R. Kelley, the employer's physi-

cian, and told him of his injury. Dr. Kelley gave the appellee some medicine and the appellee went home, returning next day for another visit to Dr. Kelley. The appellee was not able to work after receiving his injury. There was some contradiction in the medical testimony, but Dr. Kelley and three other physicians testified that the appellee had suffered an umbilical hernia. It seems, however, that Dr. Kelley did not discover the hernia until several weeks later. The Commission after hearing the testimony found that the appellee had not given sufficient notice of the hernia within 48 hours after it occurred, as required by the statute. The circuit court reversed the finding of the Commission and entered a judgment in favor of the appellee. From that judgment the employer and its insurance carrier prosecuted an appeal. The Supreme Court on appeal affirmed the judgment of the lower court and in its opinion said, that a denial of compensation under the facts disclosed by the record would not be justified, even though the employee may not have specifically advised the physician of the existence of the hernia within 48 hours after the accident.

The appellees in the case that we have here cite in support of their contention that the appellant's claim was properly denied by the Workmen's Compensation Commission the case of Meador v. Dollar Store et al., 217 Miss. 447, 64 So. 2d 574. But the facts in that case were entirely different from the facts in this case. In the Meador case the appellant's proof showed that the injury occurred on December 12 or 13, while the appellant was lifting cases of shoes in the Dollar Store. After his alleged injury the appellant tried to work during the remainder of the day, but did not return to work on the following day. Several days later the appellant became sick with the flu, and on December 21 called in Dr. R. H. Barnes, who examined and treated him for the flu. The appellant complained at that time of a pain in his right side, and the doctor told him to come

to his office for a further examination after he had recovered from the flu. The appellant went to Doctor Barnes' office on December 29, and Doctor Barnes then discovered the hernia. Doctor Barnes testified that when he called upon the appellant on December 21 the appellant had been ill with the flu two or three days. The record failed to show that the appellant had been confined to his bed from the date of his alleged injury until the date of Doctor Barnes' visit on December 21.

It thus appears that in the Meador case eight or nine days elapsed after the appellant sustained his alleged injury before a physician was called in; and when the physician was called in, the purpose of his visit was not to relieve the physical distress following the descent of a hernia, but to examine and treat the appellant for the flu. Approximately seventeen days elapsed before the appellant was examined for the hernia complaint. In view of the above stated facts, the court held that the proof was insufficient to show that the physical distress following the descent of the hernia was such as to require the attendance of a licensed physician within five days after the alleged injury.

We think that the Meador case was correctly decided. But the decision rendered in that case is not controlling here. While there is language in the opinion in that case that tends to support the appellees' contention in this case that a hernia injury is not compensable under our statute unless the proof shows the actual attendance of a licensed physician or surgeon within five days after the alleged injury, the court clearly indicated in its opinion that there might be cases in which the failure to prove the actual attendance of a licensed physician or surgeon within the five-day period would not preclude a recovery.

We think that the proof in this case was sufficient to meet the requirements of the statute. The appellant testified that, when he reached his home a short time

after his injury, he was still suffering severe pain, and that he requested his wife to call his family physician. He learned that his family physician was out of town. The appellant remained in bed until the following Monday, and on that day reported to the company hospital, where he was examined by two of the company physicians and was told that he had a hernia. These facts, we think, constitute convincing evidence that the physical distress following the descent or protrusion of the hernia was such as to require the attendance of a licensed physician or surgeon within the statutory period. There is no intimation in the record that the appellant was malingering. He was confined to his bed several days after his injury and reported to the hospital for examination and treatment as soon as he was able to do so. What the doctors found when they examined him one week after his injury affords convincing evidence of the serious nature of his injury. The appellant had been given a physical examination before he started to work for the company in February. The attorney-referee found that his injury arose out of and in the course of his employment. The statute does not require that an injured employee in a hernia case be denied compensation merely because it is not shown that he was actually attended by a licensed physician within the five-day period. If the legislature had intended to impose such requirement, it could have done so by the use of language that would have had that meaning. But the legislature did not use such language. This Court has held that the Workmen's Compensation Law shall be liberally construed in favor of the injured employee; and, as stated by the Arkansas Court in the case of Williams Mfg. Co., et al. v. Walker, *supra,* ''The humanitarian objects of such laws should not, in the administration thereof, be defeated by overemphasis on technicalities—by putting form above substance.''

 We think that under the facts disclosed by the record in this case the appellant's injury was compensable, and that the Commission and the circuit court erred in denying his claim.

The judgment of the lower court is therefore reversed and the order of the Workmen's Compensation Commission denying the appellant's claim is set aside, and the cause is remanded to the Circuit Court with instructions to remand the case to the Commission for further proceedings in accordance with the views herein expressed.

Reversed and remanded.

*Hall, Lee, Holmes, Arrington* and *Ethridge, JJ.,* concur.

McGEHEE, C. J., dissenting:

I would concur in the holding of the majority opinion herein except for the case of Meador v. Dollar Store, et al., 217 Miss. 447, 64 So. 2d 574, but in view of the decision in that case which is not being overruled or modified, I find it necessary to dissent in the instant case.

LOTTERHOS, J., dissenting:

It is my view that the Court has misinterpreted that section of the workmen's compensation act applicable to hernia, and is in error in reversing the commission and the court below in this case. The sole question presented on this appeal is whether the Court shall find as a matter of law that the statute is complied with when the claimant, admittedly having failed to submit himself to a physician or surgeon readily available to him within five days after the injury, testifies that he suffered pain, remained in bed, and made one telephone call to a doctor within the five days provided by the statute.

I think this case is controlled by Meador v. Dollar Store, Miss., 64 So. 2d 574, and I also am of the opinion that the Meador case correctly interpreted the purpose and intention of the legislature in laying down requirement number five for hernia cases. Sec. 6998-12, Code of 1942, (Vol. 5-A, recompiled) contains the applicable statute (Sec. 8 (f) of Chap. 354, Laws of 1948, as amended by Sec. 6 (f) of Chap. 412, Laws of 1950). That section has been quoted in the majority opinion.

The question for consideration is what is meant by the provision that the physical distress must be ''such as to require the attendance of a licensed physician or surgeon within five (5) days after the injury.'' The word ''require'' has several definitions as shown in the majority opinion. It is also defined by current dictionaries as ''to demand'' or ''to impose a compulsion upon; compel.'' It seems to me that the legislature used the word in this sense rather than with a less compelling meaning. In common practice, if a man is injured or is ill to the extent of requiring a doctor, he proceeds then to obtain the services of a doctor, provided one can be found. When one says, ''I have been sick and I required the services of a physician'' or ''My illness required the attendance of a doctor,'' everyone understands that he has had a doctor to call upon him. If the legislature, in laying down particular requirements in the case of hernia, had intended that it need only be shown that it would have been desirable to have a doctor, it would not have found it necessary to include requirement number five, because the other four requirements would have amounted to substantially the same thing. Even without requirement number five, the claimant must show that there was a descent or protrusion immediately after the injury, that there was severe pain, and that the physical distress was noticed immediately. The effect of the present decision is that when those things are shown it conclusively follows that the at-

tendance of a licensed physician or surgeon was required within five days, even though the claimant did not obtain such services when he could easily have done so.

It is to be noted that the original provision in the 1948 statute was that the physical distress must require the attendance of a physician within forty-eight hours, and the 1950 statute, in liberalizing the requirements, extended the time to five days. Why was it necessary to extend the time from forty-eight hours to five days if it is actually not necessary to show the attendance of a physician at all? The legislature no doubt recognized that there would be cases in which a hardship might be imposed upon a claimant but it realized that some positive and easily proved criterion had to be established in hernia cases so that in the average instance the commission and the courts would have something tangible to use as a basis for passing upon these claims.

I think that this Court has already established the correct interpretation of the statute in the Meador case and that we should not now depart from the interpretation so given. In spite of the slight differences between the two cases, upon which the Court has attempted to make a distinction, this Court fully considered the proposition involved here when the Meador case was before it. The Court recognized in that case, as shown by the latter part of the portion of the opinion to be herein quoted, that instances might arise in which a claimant ought to be excused from having the actual attendance of a doctor within five days. It was thought that, for example, a man might be injured at some isolated place where on account of weather conditions or otherwise it would be practically impossible to get him to a doctor within the period allowed. But the court did not at that time feel that a man could remain within telephone call and easy transportation distance of numerous doctors, and, after waiting more than a

week to see a doctor, then successfully claim that his "physical distress" was such as "to require the attendance of a licensed physician or surgeon within five (5) days after the injury." Without further discussion, I quote a substantial part of the opinion in the case of Meador v. Dollar Store, *supra,* as follows:

"Paragraph 5 provides that a claimant must show by a preponderance of the evidence 'That the physical distress following the descent or protrusion of the hernia or rupture was such as to require the attendance of a licensed physician or surgeon within five (5) days after the injury for which compensation is claimed.' The 1948 Act, Section 8 (f), required the attendance of a physician 'within forty-eight (48) hours after such occurrence' of hernia. The 1950 amendment, applicable here, extended that period to 'five (5) days after the injury.' The undisputed facts show that appellant was injured on December 12 or 13, and that he did not have a physician attend or examine him until December 21, eight or nine days after the injury. The doctor's visit was occasioned by appellant complaining of the flu, and not of a hernia, although on that visit appellant complained also of a severe pain in his right side. However, we will assume that the physician's examination of December 21 constitutes the 'attendance' of a physician within the statute. But that event did not occur within five days after the appellant's injury, as the statute requires, so appellant has failed to comply with this statutory test governing the basic compensability of hernias. 1 Larson, Workmen's Compensation Law (1952), Section 39.70.

"In order to bring himself within this fifth requirement, appellant argues that he complied with it as far as was humanly and physically possible; that appellant went home and was placed in bed with the flu immediately after the severe pain in his side, and remained there until examined by the doctor on December 21 and again on December 29; and that the doctor testified that when

he called on appellant on the 21st appellant had been ill with the flu about two or three days before that date. However, the record fails to show that appellant went to bed with the flu immediately after his injury on December 12 or 13, and fails to show that he remained there until examined by his physician on the 21st. Nor would that fact, if it existed, suffice as an excuse for failure to comply with the statutory requirement. It may be that the fifth requirement of the act, that there must be the attendance of a physician within five days after the injury, is a difficult one for a claimant to meet, but that is a matter for the Legislature. We must interpret the statute as it is written.

"This is not a question of notice of injury, which is dealt with in paragraph 4 of Section 8 (f). The Legislature, for reasons apparently related to the need for immediate medical diagnosis and the earliest possible investigation of facts surrounding the injury, requires in paragraph 5 that the physical distress following the hernia must be such as to require a physician's attendance within five days after the injury. The date of the injury was the date on which the disability manifested itself, December 12 or 13, according to appellant's own testimony. 1 Larson, Workmen's Compensation Law, Secs. 39.50 and 42.11. The attendance of a physician was not required until eight or nine days thereafter. The statute states that that event 'shall' occur within five days after the injury. We need not speculate as to whether some conceivable circumstances might constitute an excuse for the attendance of a physician occurring after the five-day period. Compare 2 Larson, Secs. 78.40-78.42, excuses for late notice or claim. It is sufficient here to observe that appellant's evidence fails to indicate any reason why paragraph 5 should not apply to him."

In order to apply what has been said above to the case at bar, I will set out here the applicable facts in the present record. J. C. Lindsey, the appellant, lived

in Pascagoula, Mississippi, which is the same city in which the injury occurred. His injury occurred about thirty minutes before quitting time on Monday, June 9, 1952. He testified that at that time he "had contracted a pretty severe pain," which was in his stomach. He stated that he told his superior that he "needed to go to the First-Aid." He did not go to the first-aid station, however, but went to his home that Monday afternoon and remained there until the following Monday, June 16, at which time he reported to the first-aid station of his employer, and from there was sent to the company doctor, who diagnosed his injury as a hernia.

Now with reference to what his condition was between June 9 and June 16 and with respect to whether his physical distress was such during that period as to require the attendance of a physician, I will quote all of the testimony in the record, which comes from the claimant himself, he being the only witness on that phase of the case:

"Q. What did you do at quitting time?

"A. I didn't do anything but gather up my tools and went on out just like the rest of them did.

"Q. Did you go on home?

"A. Yes, sir.

"Q. Now, Mr. Lindsey, did you call, what happened to you after you got home?

"A. Well, it was paining me very bad at that time and I told my wife call Dr. Minkler and she called him.

"Q. Is that your family doctor?

"A. Yes, sir, and she called him and he was out. He was not there.

"Q. All right, sir. And when did you, when did you, did you go back to work the next day, Mr. Lindsey?

"A. No, sir, I didn't.

"Q. How long did you remain off?

"A. I was off until the next Monday.

"Q. And what did you do the next Monday, Mr. Lindsey?

"A. I went back to the yard and reported to my foreman I had to go to First Aid and see a doctor.

"Q. Did they send you to First Aid?

"A. Yes, sir.

"Q. They sent you to a doctor?

"A. Yes, sir, First Aid, sent me on."

\* \* \* \* \* \*

"Q. You went on home? You lived in Pascagoula at that time?

"A. Yes, sir.

"Q. You told your wife to call Dr. Minkler?

"A. Yes, sir.

"Q. What time was that?

"A. Well, that was, I suppose, around five o'clock, five-thirty, I don't know exactly.

"Q. Did she call at his office?

"A. Yes, sir.

"Q. He was not in?

"A. No, sir.

"Q. Did she call his home?

"A. No, sir, he was out of town that day.

"Q. When did they say he would be back?

"A. Well, the girl told my wife, I believe, he was out for a week. I am not sure.

"Q. So, then, that was Monday. You didn't go back to work the rest of that week? You had four working days that week?

"A. Four working days.

"Q. Your regular shift was on at the plant that week?

"A. Yes, sir.

"Q. You did not go back to the plant at all that week?

"A. Not until the next Monday.

"Q. You did not go to the doctor that week?

"A. No, sir."

\* \* \* \* \* \*

"Q. Mr. Lindsey, from the time that you went home from work on June 9th, that Monday evening, did you,

did you or did you not remain at the house during the following period of time up until the next Monday morning you went down and Dr. Weatherford and Dr. Lockard examined you in the Ingalls Shipyard Hospital?

"A. Yes, sir, I did, I went home that evening and taken a bath and examined the knot again, and I got cleaned up, I went to bed, stayed in bed.

"Q. Did you stay in bed most of the time?

"A. Most of the time, yes, sir."

It can be noted that very slight effort was made to obtain the services of a doctor, the only testimony being that the claimant had his wife call his family physician and that she was advised that he was out of town for a week. But what about other available doctors? It was shown that there were three company doctors, who had a clinic in Pascagoula, their names being Dr. Lockard, Dr. Weatherford, and Dr. Fredric. It was further shown that the names of other doctors engaged in the active practice of medicine in the City of Pascagoula in addition to the three company doctors were as follows: Dr. Minkler, Dr. McDonald, Dr. McIlwain, Dr. Hicks and Dr. Cameron.

With eight doctors available in Pascagoula, I do not see how it can be said that the claimant's physical distress was such as to require the attendance of a doctor, when he admits that he did not call in any of these doctors to examine him or treat him or relieve his pain after it was reported to him that Dr. Minkler was out of town.

*Roberds, P. J.,* joins in this dissent.