ROBERTSON, Justice:
This has been a most difficult case for the Court and has required much consideration and deliberation because the evidence is uncontradicted that there was a bona fide injury. The claimant did suffer an inguinal hernia, which was repaired by surgery on August 7, 1964, and he did not return to work until September 8, 1964.
This case is now before the Court on a suggestion of error and brief in support thereof and answer to the suggestion of error and brief in support of the answer. The employer and its insurance carrier suggest that the Court committed error in holding that all the provisions and requirements of the Mississippi Code Annotated 1942, section 6998-12 (Supp.1964), were proven by a preponderance of the evidence. It is contended, therefore, that the Court erred in holding that the claimant had met the five essentials of the statute manda-torily required to be proved for a com-pensable claim under the special hernia statute.
We have concluded that the suggestion of error should be sustained, that the majority opinion should be set aside, and the following opinion substituted therefor.
The Claimant, Russell M. Barry, had been parts manager for the Biloxi Motor Company for about 2Y2 years at the time of his injury. On June 10, 1964, about 9:30 A.M., the claimant was injured in the way and manner described by him, as follows :
A. I was putting a shipment of oil away 'in its proper place. .1 was walking down the aisle with a case of one quart oil cans in my hand. I was holding them pretty high and for some reason they slipped and instead of letting them go, which would have probably landed on my foot, I tried to catch them and it hit me in the lower part of my body.
Q. What injuries did you receive as a result of this accident?
A. A hernia.
Q. Did you have a pain or anything immediately then?
A. Well, it wasn’t immediately but it was the same day that it began to hurt.
Q. Was there * * * What kind of pain was it?
A. Well, I don’t know how to describe it. Actually what it was was the hernia trying to come out.
Q. Was there protrusion of the hernia then? When did it first begin?
A. Well, in about three days was when it first started protruding. It was hurting every day a little. * * *
Q. Let’s see now, we were * * * When did you first see a doctor about the hernia?
A. Reported to the hospital on the 6th, I went to see a doctor about the 4th or the 5th.
Q. When was that now?
August.
Q. That was the first time you saw a doctor ?
A. Yes, that was the first time I went to the Doctor. >
Q. For this. The first time you saw a doctor after the accident was about the 4th or 5th. Around the first of August, 1964.
A. Yes.
Q. To whom did you report this injury?
A. Mr. Auter.
Q. When did you report it to him ?
A. The next day. June 11, 1964.
*405 Q. What did you say to Mr. Auter when you report (sic) the injury?
A. I just told him what I did. I told him it hurt. That if it didn’t get better I was going to have to see about it.
The claimant continued to work until noon on August 6, when he entered the hospital for surgery. The next day, August 7, 1964, being fifty-eight days after his injury, he was operated on for an inguinal hernia.
Mr. George B. Auter, General Manager of the Biloxi Motor Company, testified as to the chronology of events as follows:
Q. Who was this accident reported to?
A. Well, he told me on June 11th that he had a hernia and that he was going to have to go to the doctor. He didn’t give me the details at that ■time. That was when he first mentioned it to me — on the 11th. He said it happened on the 10th.
Q. Did he tell you anything about where it happened or when?
A. Not at that time, no sir.
Q. Did you call him since then?
A. Yes I have.
Q. Any (sic) what did he say?
A. He told me that he had gotten in a shipment of oil and that he (was) carrying a case of oil to the back to be stored in the back of the building, and that the case slipped and instead of letting it fall he tried to catch it and when he did it caught— hit him in the lower part of the stomach.
Q. Did he go to a doctor * * * When did he go to the doctor?
A. He went to the doctor on I believe it was the third of August.
Q. Is this the first time that he went to the doctor since the accident ?
A. Yes. * * *
Q. Did he lose any time from work between June 10th of 1964 and August 6, 1964 ?
A. No. He didn’t lose a day and he worked through the 6th until about 12:30. He had to go into the hospital at 2:00 and we paid him through the 6th.
Q. Did he complain ? Did you hear him complain with this hernia or anything ?
A. Several times he said that it seemed to be receeding (sic) and getting better and that is when he thought it was going to be allright (sic) and then maybe he would lift something and strain a little and it would come out again and he’d say well I am going to have to go soon on this thing and in the next day or two it would go back again. He thought it was getting better and he thought he wasn’t going to have to have surgery.
The uncontradicted facts are that the claimant was injured on June 10, 1964, and did not see a doctor until fifty-five days later on August 4, 1964. He did not quit work until fifty-seven days after his injury on August 6, 1964. He was operated on for an inguinal hernia on August 7, 1964, and returned to work on September 8, 1964. This, then, is the claimant’s case, as testified to by the claimant himself, and he must stand or fall on these proved facts. The Special Hernia Statute, Mississippi Code Annotated 1942 section 6998-12 (Supp.1964), provides that:

“In all cases of claim for hernia, it shall be shozvn by a preponderance of the evidence:

1. That the descent or protrusion of the hernia or rupture immediately fol *406 lowed as the- result of sudden effort, severe strain, or the application of force to the abdominal wall;
2. That there was severe pain in the region of the hernia or rupture;
3. That there has been no descent or protrusion of the hernia or rupture prior to the accident for which compensation is claimed;
4. That the physical distress resulting from the descent or protrusion of the hernia or rupture was noticed immediately by claimant, and communicated to his employer within a reasonable time; and
5. That the physical distress following the descent or protrusion of the hernia or rupture was such as to require the attendance of a licensed physician or surgeon within five (5) days after the injury for which compensation is claimed. Postoperative hernias shall be considered as original hernias.
In every case of hernia or rupture as above defined, it shall be the duty of the employer forthwith to provide the necessary and proper medical, surgical and hospital care and attention to effectuate a cure by radical operation of said hernia or rupture, and to pay compensation under the provisions of paragraph (b) of this section, not exceeding, however, a period of twenty-six (26) weeks.” (Emphasis added.)
All five of these essentials must be proved by a preponderance of the evidence. This is what the Legislature has required in clear and unambiguous language. We will not comment on the first four requirements. It is only necessary for us to point out that in our opinion the claimant did not prove by a preponderance of the evidence that “the physical distress following the descent or protrusion of the hernia or rupture was such as to require the attendance of a licensed physician or surgeon within five (5) days after the injury for which compensation is claimed.” (Emphasis added.)
It is interesting to note that until the Workmen’s Compensation Act was amended in 1950 the requirement of Paragraph 5 of Section 6998-12, supra, was that the physical distress following the occurrence of the hernia must be such as to require the attendance of a licensed physician or surgeon within 48 hours after the injury for which compensation is claimed. This requirement was liberalized in 1950 when the time limit was extended to five days after the injury.
This fifth requirement of the special hernia statute was applied in the case of Meador v. Dollar Store, 217 Miss. 447, 450-451, 64 So.2d 574, 576 (1953), where the claimant was not examined by a physician until 8 or 9 days after the injury. In that case, this Court said:
“It may be that the fifth requirement of the act, that there must be the attendance of a physician within five days after the injury, is a difficult one for a claimant to meet, but that is a matter for the Legislature. We must interpret the statute as it is written.”
“ * * *»
“The attendance of a physician was not required until eight or nine days thereafter. The statute states that that event ‘shall’ occur within five days after injury. We need not speculate as to whether some conceivable circumstances might constitute an excuse for the attendance of a physician occurring after the five-day period. Compare 2 Larson, Secs. 78.40-78.42, excuses for late notice or claim. It is sufficient here to observe that appellant’s evidence fails to indicate any reason why paragraph 5 should not apply to him.”
The conceivable circumstances which would constitute an excuse for the attendance of a physician for the first time after the five-day limitation period occurred in the case of Lindsey v. Ingalls Shipbuilding Corporation, 219 Miss. 437, 68 So.2d 872 (1954). In that case the claimant, a ship fitter, sustained an injury on Monday, June 9, 1952, while he was engaged in helping to *407 remove some heavy brackets ■ from a bulkhead. He experienced a severe pain in the ■stomach and immediately thereafter felt a bulge to the right of the navel. It was then about thirty minutes before quitting time. The claimant’s foreman was not on ■duty that day, but the claimant reported his injury 'to another foreman who came through the boat about that time, and the claimant told him that he needed to go to first aid. The foreman said, “I will see if I can get you to first aid.” The claimant did not see the foreman again; and when quitting time came, the claimant went to his home. This Court summarized the subsequent facts, as follows:
“The appellant testified that, when he reached his home a short time after his injury, he was still suffering, severe pain, and that he requested his wife to call his family physician. He learned that his family physician was out of town. The appellant remained in bed until the following Monday, and on that day reported to the company hospital, where, he was examined by two of the company physicians and was told that he had a hernia.” 219 Miss. at 446-447, 68 So.2d at 876-877.
The Court then reasoned thusly:
“These facts, we think, constitute convincing evidence that the physical distress following the descent or protrusion of .the hernia was such as to require the attendance of a licensed physician or surgeon within the statutory period. There is no intimation in the record that the .appellant was malingering. He was confined to his bed several days after his injury and reported to the hospital for •examination and treatment as soon as he was able to do so. What the doctors found when they examined him one week after his injury affords convincing evidence of the serious nature of his injury.” (Emphasis added.) 219 Miss. at 447, 68 So.2d at 877.
The Lindsey case is clearly distinguishable from the instant case. The evidence ■is undisputed that the claimant in the instant 'case'not only was not confined' to his bed after his injury on June 10, 1964, but that he continued to work for 57 days after his injury, that is, until noon on August 6, 1964. By his own testimony,- he did not consider his injury sufficiently serious to consult a doctor until 55 days after the injury, on August 4, 1964. We observe, as did the Court in the Meador case, that claimant’s evidence fails to indicate any reason why Paragraph 5 should not apply to him. We, therefore, hold that the judgment of the circuit court affirming the decision of the Workmen’s Compensation Commission must be reversed and judgment rendered here for the appellants.
Suggestion of error sustained, former opinion withdrawn, judgment reversed and judgment here for appellants.
ETHRIDGE, C. J., and BRADY, PATTERSON and SMITH, JJ., concur.
INZER,' J., GILLESPIE, P. J., and RODGERS and JONES, JJ., dissent.
ON SUGGESTION OF ERROR