372 So.2d 265 (1979)
Maggie EVANS
v.
CONTINENTAL GRAIN COMPANY, Wayne Poultry Company and American Motorists Insurance Company.
No. 51223.
Supreme Court of Mississippi.
May 9, 1979.
Rehearing Denied July 11, 1979.
Odom & Parrish, J. Ronald Parrish, Laurel, for appellant.
Gibbes, Graves, Mullins, Bullock & Ferris, E. Brooke Ferris, III, Laurel, for appellees.
Before PATTERSON, C.J., and BROOM and BOWLING, JJ.
BOWLING, Justice, for the Court:
This is a workmen's compensation case. Benefits were denied claimant [appellant] by the administrative judge, the commission and the circuit court. We reverse and remand.
*266 Appellant had been employed by Continental Grain Company almost twenty-one years. Her job was to operate a "gizzard peeling" machine and perform other acts of packing and lifting in connection therewith. In her motion to controvert filed November 4, 1976, before the Workmen's Compensation Commission, she alleged that on June 3, 1975, she was injured when she went to the restroom near her place of employment. It was contended that because of a watery and soapy condition on the floor she fell in a sitting position on the concrete floor and was injured. The employer and carrier filed their answer on November 8, 1976, admitting the injury and admitting that appellant was entitled to temporary total disability from June 5, 1975, through September 16, 1975. The answer contended that the appellant's further disability was not the result of the accidental injury of June 3, 1975, but was caused solely by a pre-existing handicap, disease, condition or lesion.
The hearing before the administrative judge was set for February 17, 1977, at the Jones County Courthouse in Laurel. At that hearing testimony was taken only from appellant and a fellow worker, one Verlean Cooley. After this testimony, the hearing was recessed until May 10, 1977, at which time the hearing officer received the testimony of Dr. James C. Bass of Laurel and the deposition testimony of Dr. Donald Cook of Meridian. Other than documentary evidence the testimony of these four persons constituted all presented to the administrative judge.
At the hearing on February 17, 1977, appellant testified regarding her fall. She stated she immediately contacted Mr. Emmett Smith, her foreman, and reported the injury to him. It was decided that she would try to continue her work that day. Appellant reported to work the following day but the pain was so severe that she again contacted Mr. Smith, who sent her to the medical station where a nurse gave her some pills. Mr. Smith requested that she try to work because they were short-handed, and wait until the end of the day's work before seeing a doctor. She was then sent to see Dr. R.L. Alexander, the company physician. Appellant did not work again and has not been able to work since, according to her testimony. She was treated by Dr. Alexander for several weeks until she was told by him that the company's insurance carrier had advised that he would receive no further pay. Consequently, she then went to see another physician, Dr. Victor Applewhite, who stated to her that he could not treat her unless he was paid. After that, appellant contacted the Vocational Rehabilitation authorities who sent her to Dr. Douglas C. Brown, an orthopedic surgeon with the Laurel Bone & Joint Clinic.
Appellant testified that she had schooling only through the seventh grade; that she has tried to do other types of manual work, including housework, but could not do so. She testified that prior to her fall of June 3, 1975, she had had no trouble with her back and was able to do a full day's hard work for almost twenty-one years with appellee-company.
Witness Verlean Cooley also had worked for appellee-company many years and was a member of the company's safety committee. Her positive testimony was that during all the years of employment appellant had had no trouble whatever with her back. She further testified that she has seen appellant a lot of times since her injury and that she appears to be in pain continually and it is obvious that something was still wrong with her.
As hereinbefore stated, the only two witnesses other than appellant and Mrs. Cooley were Dr. James Bass and Dr. Donald Cook. The sole evidence offered by appellee was that of Dr. Bass. His testimony will be discussed later but the occasion should be referred to at this time in regard to developments at the end of the February 17, 1977, hearing. Appellant's attorney filed a motion to set the case for further hearing in order to enable him to present medical evidence of appellant's disability. He stated in this sworn motion that at the beginning of the hearing he was prepared to *267 present and rely on the testimony of Dr. Douglas C. Brown, who, as stated before, had treated appellant at the instigation of the Vocational Rehabilitation authorities. The sworn motion of appellant's attorney then stated that on the day of the hearing and before being called to give testimony, Dr. Brown, "at the last minute," informed appellant's attorney that his testimony would not conform to the written reports he previously had given after his examinations and treatments of appellant. Copies of these reports were attached to the verified motion. It was also stated it had been ascertained that all the reports given by Dr. Brown had not been made available to appellant's attorney.
The reports of Dr. Brown attached to the motion showed that he had examined and treated appellant on at least four occasions subsequent to the company's physician, Dr. Alexander, stopping his treatment because his pay was stopped. On January 6, 1977, Dr. Brown wrote:
Today the patient continues to have pain in the left lumbar spine with radiation to the left leg. She notes that it gets better at times with her brace, but at other times the pain is worse. Today the examination shows tenderness over the left sciatic nerve. Lumbar disc instability with degenerative arthritis L-5, S-1 and left S-1 nerve root impingement. Again I feel that this patient should be hospitalized for a myelogram for a possible laminectomy and fusion. At the present time she is being given Equagesic until an authorization for surgery can be obtained from Vocational Rehabilitation.
On February 10, 1977, Dr. Brown wrote:
Today this patient's case was discussed with her lawyer, and I was informed that she has a case going to court on Thursday, 2-17-77.
My opinion at the present time is that her symptoms are probably due to the fall that she supposedly sustained some two years ago. I still feel that she merits hospital examination, myelography, and possibly laminectomy and fusion.
At the present time she is totally disabled from her previous occupation. However, this may be changed if her condition is found to be amenable to surgical correction.
It just so happened that Dr. Brown was an associate in the Clinic headed by appellees' only witness, Dr. James Bass. His testimony will be discussed later at more length, but at this point it should be stated that his testimony on direct examination was that he had seen appellant one time and that was on August 18, 1975, and he found her without any physical trouble or disability of any kind. It is not for this Court to cast aspersions on anyone but it does appear curious to say the least as to why Dr. Bass' associate, Dr. Brown, changed his mind on February 17, 1977, after having examined and treated appellant for several months.
At the May 4, 1977, hearing before the administrative judge, appellant offered the deposition of Dr. Donald Cook of Meridian, Mississippi. It was stipulated by attorneys for appellees that Dr. Cook was a qualified practicing orthopedic surgeon. Dr. Cook stated that he first saw appellant on March 31, 1977, at which time she was complaining of pain in the lower back area. The history taken by him showed that she had not had any such complaints prior to her fall on June 3, 1975. He explained the process of every person over the age of twenty years developing some extent of degenerative disc condition in their back; some, of course, developing much worse than others. Dr. Cook stated that in his opinion the appellant had such a condition at the time of her injury but that the condition was "traumatically exacerbated" by the injury. When asked his opinion as to the cause of "traumatic exacerbation" of the disc, his opinion was based on her clinical history and medical probabilities that it was the injury she reported. He explained that "exacerbation" specifically means "making worse," and that in the case of appellant, it was the stretching or straining of the bands surrounding the discs. He testified that in appellant's situation, traumatic exacerbation referred specifically to the bringing on *268 of symptoms by injury. He further testified that in his opinion appellant was temporarily totally disabled from performing her previous occupation. His prognosis was undetermined; that appellant would need further treatment in an effort to relieve her condition, and that unless she received this treatment, the longer the situation continued, the poorer the rehabilitative potential and in all probability she would end up unemployable and "on the road to welfare." Dr. Cook also testified that he found "objective findings" regarding appellant's back condition. He examined appellant a second time on April 20, 1977, and found her condition basically unchanged. At the end of direct examination, Dr. Cook repeated his diagnosis as to the cause of appellant's disability, "again based on the clinical history and entire evaluation it was the degenerative disc process with the traumatic exacerbation caused by the reported injury of June- 1975." His definite opinions were repeated on cross-examination.
Now we come to the testimony of Dr. James Bass, which, as stated before, was the sole evidence presented by appellees. He testified that at the request of Dr. Alexander, the company physician, he examined appellant on August 18, 1975, at which time she was complaining in the low-back area. She gave him the history of her fall in June, 1975. He testified that his diagnosis was that she had recovered from her injury and had no disability or physical trouble of any kind. On cross-examination Dr. Bass admitted that appellant had degenerative discs in her lower back as did all persons her age to some extent. He was asked his opinion as to aggravation of the disc condition by appellant's fall. The answer was, "I don't know whether it did or not. It could."
On cross-examination, a letter dictated August 18, 1975, by Dr. Bass to Dr. Alexander was introduced in which Dr. Bass stated, "she is tender in the lumbo-sacral spine." Also introduced on cross-examination was an insurance company report bearing Dr. Bass' signature, and the date of September 5, 1975. Under the question, "Give accurate description of nature and extent of injury and state your findings," there was typed the answer, "Pain, low back." Under the question, "Will the injury result in permanent defect?" there was typed the word, "Undetermined." Under the request for information styled, "Describe treatment given by you," there was typed the words, "Conservative treatment."
The administrative judge found that "the medical evidence in this cause establishes that the claimant suffered from a pre-existing disease, lesion or handicap, which is the sole cause of the present disability suffered by claimant, if any." The Commission, on application for review, held that this finding was correct and based this affirmance on the testimony of Dr. Bass. The opinion stated, "In affirming, the full commission notes that Dr. Bass was the primary treating physician and that as such, he was afforded the benefit of the initial examination at this critical time."
From the foregoing discussion of the record, it is obvious that this statement is erroneous. Appellant was placed under the care of the company physician, Dr. Alexander, the day after her fall, or on June 4, 1975. He treated her for several weeks before being informed that no further treatment would be paid for by the insurance carrier. Dr. Bass only saw claimant one time, August 18, 1975, some ten weeks after her injury. It is of interest to stop here and note that although the administrative judge and the Commission found that appellant's disability of any kind stopped on August 18, 1975, when she was seen by Dr. Bass, the original answer filed by appellees stated that she was disabled through September 16, 1975, and compensation was paid to appellant through that date, which was approximately a month after the finding of fact that her disability ceased.
This Court has stated on many occasions its standards for review of compensation cases. In Central Electric Power Association v. Hicks, 236 Miss. 378, 110 So.2d 351 (1959), we said:
The general rule is that a decision of the commission on disputed issues of fact will be affirmed, where there is substantial *269 and reasonable evidence in the record to support the commission's findings of fact. As an abstract statement, that rule is correct, but it means nothing apart from the statutory standards and the judicial standards based upon the statute which has been established in a large number of cases in recent years. These standards always consist of two parts, one defining the type of questions the administrative determination of which is binding upon the courts, and another which defines the type of questions that are reviewable by the courts. But either part is and should be sufficiently flexible to permit the court to check any fundamentally erroneous exercise of administrative power. And questions of fundamental importance are always open to judicial review. There must be an application of the pertinent statute in a just and reasonable manner.
.....
... [W]e hold that judicial review of findings of the Commission extends to a determination of whether they are clearly erroneous. And a finding is clearly erroneous when, although there is some slight evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made by the Commission in its findings of fact and in its application of the Act. (Citations omitted).
See also Lucedale Veneer Company v. Rogers, 211 Miss. 613, 48 So.2d 148, 53 So.2d 69 (1950); Universal Manufacturing Co. v. Barlow, 260 So.2d 827 (Miss. 1972).
There is no need to cite from the many opinions of this Court holding that the compensation statutes should be given a liberal construction and doubtful cases should be resolved in favor of compensation. King v. Westinghouse Electric Corp., 229 Miss. 830, 92 So.2d 209 (1957); Lindsey v. Ingals Shipbuilding Corp., 219 Miss. 437, 68 So.2d 872 (1954); National Surety Corp. v. Kemp, 217 Miss. 537, 64 So.2d 723 (1953); Deemer Lumber Co. v. Hamilton, 211 Miss. 673, 52 So.2d 634 (1951).
There is another point that needs to be made in this case. As hereinbefore stated, the hearing officer and the commission as affirmed by the circuit court held that claimant's disability was solely the result of a preexisting disease, lesion or handicap. In Universal Manufacturing Co. v. Barlow, 260 So.2d 827 (Miss. 1972), the Court said the following:
It has been a predominate rule in the field of workmen's compensation cases in this state for some time that where a workman had some preexisting infirmity which was dormant or inactive so that he was able to pursue the normal work requirement of his employment, but because of an injury resulting from the workman's employment his dormant infirmity was lightened up or activated so that the injury and the infirmity combined together to cause him to become totally or partially disabled, his disability was compensable. See the many cases cited by Dunn's Mississippi Workmen's Compensation, 2d Ed. section 94, p. 124 (1967).
In Bolton v. Catalytic Construction Co., 309 So.2d 167 (Miss. 1975), the Court said:
It is without question that appellant was able to perform heavy labor involving twisting, bending and stooping up to the date of his injury in spite of the congenital anomaly which consisted of an extra lumbar vertebra.
Where one enjoys functional ability to perform his work in spite of an existing congenital defect and suffers an injury which aggravates the existing congenital defect, thereafter causing a loss of functional ability, then as long as the functional loss continues the corollary to the Rathbone [237 Miss. 588, 115 So.2d 674] rule will not apply as a bar to compensation. Simply stated, when an injury causes loss of functional ability, it is compensable.
See also M.T. Reed Construction Co. v. Garrett, 249 Miss. 892, 164 So.2d 476 (1974).
In the case of Weaver Pants Company and Employer's Mutual of Wausau v. Duncan, 231 So.2d 489 (Miss. 1970), the case involved *270 a traumatic aggravation of a pre-existing degenerative disc. The Court specifically held that "[t]he apportionment statute was not intended to cover those normal degenerative effects accompanying age." It was stated there that the "apportionment statute provides for same in cases of physical handicaps, disease, or lesion. Normal degenerative actions accompanying age cannot be classified as a `disease.' The evidence failed to show any handicap or lesion." See also Riverside of Marks and Travelers Insurance Co. v. Russell, 324 So.2d 759 (Miss. 1975).
There is no evidence whatever that appellant had any type of physical trouble with her back prior to her injury of June 3, 1975, after working for employer/company almost twenty-one years. At most, appellant's disability was the traumatic exacerbation of a normal degenerative condition. There is no evidence in the record to show that she had a condition at the time of her fall that could be classed as a "handicap or lesion." As stated in Weaver, supra, she certainly did not have a "disease."
In our opinion, the finding of the administrative judge, as affirmed by the Commission and the circuit court, was not based on substantial evidence as shown by the record and the cause should be reversed and remanded to the Commission for further hearing to determine the extent of appellant's disability, whether temporary or total, and other benefits to which appellant may be entitled, including penalties, if any.
REVERSED AND REMANDED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, LEE and COFER, JJ., concur.