BROOM, Justice,
for the Court:
Hernia related workmen’s compensation benefits are at issue in this cause. Initially the administrative judge ruled that the hernia sustained by Fay 0. Bartlett (claimant) *399 was compensable, but the Workmen’s Compensation Commission (with one dissent) reversed the administrative judge’s order. Claimant then appealed to the Circuit Court of Claiborne County, which court reversed the commission and reinstated the administrative judge’s order awarding claimant benefits. We affirm.
Interpretation of Mississippi Code Annotated § 71-3-23 (1972), upon the facts presented, is dispositive of the action. The parts of the statute applicable here are the following:
In all cases of claim for hernia, it shall be shown by a preponderance of the evidence;

(b) That there was severe pain in the region of the hernia or rupture;

(e) That the physical distress following the descent or protrusion of the hernia or rupture was such as to require the attendance of a licensed physician or surgeon within five (5) days after the injury for which compensation is claimed.' Postoperative hernias shall be considered as original hernias.
On June 12, 1975, claimant (in the scope of his employment with Bechtel) and his co-workers were carrying some heavy pipe. One of the co-workers dropped his part of the load, causing the weight to shift to claimant. Promptly a knot (hernia) popped out on his left side just above the waistline, and he fell to the ground. A few minutes after pushing the knot in, claimant went to see Bechtel’s company nurse (Hildebrand) and reported to her the facts concerning the knot. According to claimant, the nurse responded “if it happened again they would send me to the doctor.” Claimant did not miss any time from work on account of the hernia until November of 1975, when the hernia popped out again while he was employed (still by Bechtel) in the State of Washington. After the hernia popped out again in November, claimant came home to Vicksburg, Mississippi, and consulted Dr. Kellum, who referred him to Dr. Marascal-co. The latter diagnosed the hernia, and had the claimant hospitalized (he was given surgery April 30,1976) for the hernia. Several weeks later, the claimant returned to his employment fully recovered.
Some argument is made that the claimant failed to establish that his pain “was severe” under sub-section (b) of § 71-3-23, supra. According to claimant, however, when the hernia popped out, he was unable to straighten up for a while. Considering the testimony, our view is that it would be unrealistic to say that his pain was not “severe” under the statute.
The dispositive issue is: Was the physical distress following the sudden protrusion of claimant’s hernia in compliance with subsection (e) of § 71 -3-23, supra, “such as to require the attendance of a licensed physician or surgeon within five (5) days after the injury . . Argument of the employer and carrier is that the commission’s order denying compensation was supported by substantial evidence, and therefore, reversal by the circuit court was error. Claimant’s position is that he required medical treatment at the time the hernia occurred, and that accordingly he presented himself for the necessary medical treatment to the most appropriate place, the First Aid Station of Bechtel. He argues further that employer Bechtel should be estopped from pleading that claimant Bartlett failed to require treatment by a physician when it was the act of Bechtel (through its nurse) which prevented claimant from seeing a physician at that time. Claimant correctly notes that the proof is clear and sufficient that when consideration is given to the episode of June 12, 1975, and the operation of April 1976, the existence of a hernia on the earlier date is confirmed. In like manner, he says his requirement of the services of a physician on June 12, 1975, is established.
Our decisions in three previously decided cases focused upon the meaning of sub-section (e), supra. In Meador v. Dollar Store, 217 Miss. 447, 64 So.2d 574 (1953), an employee (claimant) incurred a hernia when he lifted a case of shoes in a warehouse. Mea-dor did not notify the Dollar Store of his *400 injury until ten or eleven days afterward when he sent a verbal message of his injury by way of the store’s porter. Two days before he notified the Dollar Store, he became sick with the flu and remained so for eight days. While Meador was thus home in bed, a doctor came to his house to examine him and during his examination Meador complained of severe pain in his right side. After recovering from the flu, Meador went to the physician’s office, whereupon the hernia was discovered, approximately seventeen days after it had occurred. Upon such facts, we held that the claimant did not comply with the statutory test governing the basic compensability of hernias because, even assuming the physician’s examination constituted the “attendance” of a physician within the statute, that event did not occur within five days after the appellant’s injury as the statute requires. Our decision in Meador recognized, however, that there may be conceivable circumstances “[which] might constitute an excuse for the attendance of a physician occurring after the five-day period.”
In Lindsey v. Ingalls Shipbuilding Corp., 219 Miss. 437, 68 So.2d 872 (1954), shipfitter Lindsey sustained a hernia on June 9, 1952, while engaged in helping to remove some heavy brackets from a bulkhead. Lindsey reported his injury to a foreman, and, after arriving home, attempted to get in touch with a doctor who unfortunately was out of town. As a result, Lindsey was not attended by a licensed physician or surgeon until June 16 after the doctor returned. We held that the statute does riot require that the claimant prove that he was actually attended by a physician or surgeon within five days after the injury. Our decision was to the effect the claimant may establish his claim by proving that the physical stress following the descent of the hernia was such as to require (not that he actually received) the attendance of a physician or surgeon within five days.
More recently, Biloxi Motor Co. v. Barry, 192 So.2d 403 (Miss.1966), another hernia case, was before us. Barry, the claimant, was injured June 10, 1964, and did not see a doctor until fifty-five days later: August 4, 1964. With regard to Lindsey, supra, Robertson, J., writing for the Court, stated:
The Lindsey case is clearly distinguishable from the instant case: The evidence is undisputed that the claimant in the instant case not only was not confined to his bed after his injury on June 10, 1964, but that he continued to work for 57 days after his injury, that is, until noon on August 6, 1964. By his own testimony, he did not consider his injury sufficiently serious to consult a doctor until 55 days after the injury, on August 4, 1964. (192 So.2d at 407).
Obviously, Barry and the present case have factual similarities, but there are significant differences. Bartlett, the present claimant, immediately after his injury, went to see his employer’s staff nurse, who obviously possessed medical knowledge superior to the layman claimant. It was she who advised him that if it happened again she would send him to a doctor. In Barry, the claimant merely informed his employer on several occasions of his complaint, but saw no medical doctor, nurse, or the like. Here, the claimant reported the incident to Bechtel’s medical representative whose response can fairly be said to have steered claimant away from literally consulting a physician.
Other jurisdictions in the United States have statutes similar to our sub-section (e), supra. In Dorval v. United Piece Dye Works, 15 N.J.Misc. 21, 189 A. 62 (1936), the New Jersey Court had under consideration a statutory requirement very similar to our sub-section (e):
“[T]hat the attendance of a licensed physician was required within twenty-four hours after the occurrence of the hernia.” Ibid.
In Dorval, the claimant, while lifting a barrel, experienced sudden pain in the right groin and walked some fifteen or twenty feet to a toilet. He noticed a lump in his right groin, which he reported to his foreman. For about two hours he continued to engage in light work until his regular quitting time. He walked to his nearby home, *401 and, upon reporting to work the next day, visited the mill clinic. The nurse in charge, after taking a history without making an examination, told Dorval to take it easy and return the following day when the doctor would be there. In upholding Dorval’s claim, the New Jersey Court held:
The fact that the employee actually reported to the clinic for treatment, in the light of surrounding circumstances and after consideration of all the testimony, is to me persuasive evidence that his physical distress was such that the attendance of a licensed physician was required within the statutory period. He, in fact, sought such assistance. The statute does not use the word “obtained,” it pointedly employs “required,” which implies necessity, and doubtless for the very good reason that a situation might arise where the necessity for a physician’s services might be extreme and yet the circumstances conceivably preclude his actual attendance within the required time.
The petitioner below undoubtedly was not aware of the statutory requirements, he acted honestly, was unintentionally, of course, lulled into a sense of security by the nurse in charge of the clinic, and, in these circumstances, it would certainly be contrary to the purpose and intent of this beneficial legislation to penalize the employee. (189 A. at 63).
It is our opinion that the instant case falls under the rule in Lindsey rather than that of Barry. As happened in Dor-val, the claimant here sought medical help within five days by reporting to his employer’s staff nurse who in the words of the New Jersey Court “lulled [him] into a sense of security . . . The black letter of the law does not require that for a hernia to be compensable the claimant must be incapacitated from working at some time during the specified period, but only that he requires the attendance of a physician. Granted, claimant Bartlett (not shown to be a malingerer in any sense) did not find it necessary to stay off work or immediately go to bed because of his condition, but he did seek medical help from his employer’s staff nurse who encouraged him not to go to a doctor. Arguably, it is very likely that Bartlett would have gone to see a physician except for the suggestion of his employer’s nurse on the scene. We adopt the reasoning of the New Jersey Court in Dorval, supra, which is squarely on point. To deny Bartlett (the present claimant) compensation upon the record as made would be to penalize him by invoking a hypertechnical construction of sub-section (e).
The substantial evidence rule, well established in this jurisdiction, does not require a circuit judge to act as a rubber stamp every time a workmen’s compensation case is appealed to circuit court. Of course, circuit judges and this Court must (as we do) give great weight to the fact findings of the Workmen’s Compensation Commission. Nevertheless, Miss.Code Ann. § 71-3-51 (1972), entitled “Court review of compensation award” in its second paragraph provides: “The Circuit Court shall review all questions of law and fact” (emphasis added). In using the word “shall”, the lawmakers specifically and mandatorily require circuit judges to act in a meaningful but responsible fashion in acting upon appeals of this sort. Here, we think that the action of the circuit court in reversing the majority of the commission was in accord with the spirit and letter of the quoted portion of § 71 -3 • 51, supra. Accordingly, we must affirm his action, which reinstated the award according to the order of the administrative judge.
AFFIRMED.
PATTERSON, C. J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, LEE, BOWLING and COFER, JJ., concur.