401 So.2d 696 (1981)
BAILEY LUMBER COMPANY and The Continental Insurance Company
v.
George MASON.
No. 52321.
Supreme Court of Mississippi.
May 20, 1981.
Rehearing Denied August 12, 1981.
Velia Ann Mayer, Watkins & Eager, Jackson, for appellants.
David S. Raines, Moreton, Woodfield, Raines & Bloss, John F. Hester, Hester & Stegall, Gulfport, for appellee.
Before SMITH, P.J., and LEE and BOWLING, JJ.
BOWLING, Justice, for the Court:
This is a workmen's compensation case and is appealed from the Circuit Court of Harrison County. The primary question involved is whether or not the Workmen's Compensation Commission and/or the Circuit Court on appeal has the right to set aside a purported "compromise settlement" under section 9(i) of the Workmen's Compensation Act [Miss. Code Ann. § 71-3-29 (1972)]. Appellee admittedly sustained a compensable injury on December 20, 1973, which resulted in considerable permanent partial disability and considerable medical treatment, including an operation. On July 8, 1975, appellee and appellants executed an instrument styled "Petition for a Compromise Settlement," in which the end result was a request for a payment of $6,500 to be made by appellants to appellee in full settlement of appellee's admittedly existing claim. On July 16, 1975, the Commission signed an "Order Authorizing Compromise Settlement," after which appellee received the money and executed a release and a form B-31. These instruments were executed on July 17, 1975. On April 19, 1976, an attorney, on behalf of appellee, filed a *697 letter with the Workmen's Compensation Commission requesting that the cause be reopened because of the medical situation that existed at the time of the purported settlement. Appellants filed their motion to dismiss the request to reopen. The controversy was then assigned by the Commission to an administrative judge for hearing.
After hearings, the administrative judge issued an order reopening the cause for further consideration. This order was appealed to the full Commission which reversed the order of the administrative judge and sustained appellants' motion to dismiss. The cause was then appealed to the Circuit Court of Harrison County requesting that the court reverse the full Commission and reinstate the cause for hearing under the appellate power of the circuit court under Mississippi Code Annotated section 71-3-51 (1972), providing that "the circuit court shall review all questions of law and fact." The circuit court issued a written opinion and order reversing the full Commission and reinstating the order of the administrative judge to reopen the cause with further proceedings to determine benefits, if any, owed to appellee.
In their appeal here, appellants present three assignments of error, as follows:
1. The circuit court erred in reversing the full Commission order, which had refused to reopen the workmen's compensation claim of George Mason, and further erred in sustaining the petition of the claimant to reopen his claim and in ordering the claim reopened and the Commission to proceed to determine Mason's benefits.
2. The circuit court erred in construing the Mississippi law applicable to the reopening of workmen's compensation settlements concluded pursuant to section 9(i) of the Mississippi Workmen's Compensation Act [Miss. Code Ann. § 71-3-29] and specifically erred in holding that Mississippi Code Annotated § 71-3-53 (1972) applies to reopening cases previously concluded by 9(i) compromise settlements.
3. The circuit court erred in holding that the Commission made a mistake in the determination of a fact and in holding that Mason's case should re reopened on the ground of "mistake."
In preparing and issuing opinions, this Court desires to make them as short as possible, taking into consideration the clarity and requirements for disposing of the appeal. In presenting a full picture of this appeal, however, it is necessary for it to appear lengthy. The primary question involved requires considerable study and full presentation in an opinion. The cause may be brought more in perspective at the outset by quoting from the order of the administrative judge, as follows:
The claimant is a 38 year old man with a fourth grade education and unable to read or write except to sign his name. His lack of intelligence was clearly demonstrated at the hearing by his difficulty to understand and answer the questions while testifying. On or about December 20, 1973, while employed as a truck driver, the claimant was carrying a bundle of sheet rock up some stairs and sustained injuries to his back. He was first examined by Dr. R.A. Mitchell on December 27, 1973, and advised to return to work on January 7, 1974. Thereafter, he was seen by Dr. Hal D. Bishop on February 7, 1974, and referred to Dr. Richard E. Buckley. Dr. Buckley diagnosed a herniated nucleus pulposis at L-4, L-5, right, and a prior compression fracture at L-3. On April 15, 1974, Dr. Buckley and Dr. Bishop performed surgery existing (sic) of a hemilaminectomy, partial, L-4, right; diskectomy, L-4, L-6, right; and a bilaterial spinal fusion of L-5, L-6, and S-1. The claimant performed manual labor all the working years of his life, and he was not worked since the date of the accident.
All the medical reports of Dr. Robert R. Smith, Dr. Hal Bishop and Dr. Richard E. Buckley were introduced into evidence by agreement of the parties. According to the final medical reports of Dr. Buckley and Dr. Bishop, dated February 20, 1975, the claimant was totally disabled. According to Exhibit 10, attachment D, Dr. Robert R. Smith never received the records of previous doctors for review in his consideration of the claimant's case. Based solely on his examination *698 of the claimant, Dr. Robert R. Smith rated the claimant's disability to the body as a whole at 25 percent. Dr. Smith further indicated that he strongly suspected that the claimant's problem began some years prior to the injury and estimated that about one-half of 25 percent may have pre-existed his described injury. Neither Dr. Bishop or Dr. Buckley or even Dr. Smith released the claimant to return to work.
Although Dr. Bishop and Dr. Buckley submitted final medical reports on February 20, 1975, stating that the claimant at that time was totally disabled, according to the claimant, he has remained under the care of Dr. Bishop through the time of the last hearing herein. After Dr. Buckley and Dr. Bishop submitted their reports stating that the claimant remained totally disabled, the claimant had several telephone conversations with the carrier's claims representative, Melba Sheppard. During these conversations, claimant expressed due concern over the fact that he had incurred a number of debts following his injury, and the claimant contends that Mrs. Sheppard stated that they would be willing to offer him $6,500.00 to get him out of a bind. Mrs. Sheppard asked the claimant if he would be willing to go to another doctor and the claimant agreed to be sent to another doctor for an opinion. This was when the carrier sent the claimant all the way from Gulfport, Mississippi, to Jackson, Mississippi, to see Dr. Robert Smith even though there are a number of good orthopedic and neuro surgeons on the Gulf Coast. Then some time around July 1, 1975, after the examination by Dr. Smith, Mrs. Sheppard again contacted the claimant by telephone and made an offer of $6,500.00 based upon a rating of twelve and one-half percent disability by Dr. Smith.
Mrs. Melba Sheppard, a claims-adjuster with twenty-eight and one-half years of experience in that field, testified that she told the claimant that he had a twelve and one-half percent permanent partial disability and that she explained to the claimant that she would pay him so many weeks of compensation over and above whatever she decided that he was actually entitled to receive. She further testified that she explained that the extra amount was for any future medical he might have. Mrs. Sheppard further advised the claimant that the amount he was actually entitled to receive plus the extra money for future medical was $6,500.00. Her recollection of the circumstances of this settlement were extremely vague. However, she specifically recalled that she had the medical reports of the claimant's attending physicians, Dr. Bishop and Dr. Buckley, and considered them in her determination to offer the claimant $6,500.00. She could not recall whether she discussed the evaluations of the claimant's attending physicians with him wherein those physicians advised that the claimant was totally disabled, but she was able to recall that she did not provide the claimant with copies of these evaluations.
Mrs. Sheppard testified that she explained to the claimant that he could get his settlement in the form of weekly benefits or in the form of a lump sum as provided under Section 9(i) of the Mississippi Workmen's Compensation Act. She states that the claimant decided upon the lump sum settlement and was most anxious to get his money. In regard to this same conversation, the claimant testified that it was his understanding from what Mrs. Sheppard explained that he would get $6,500.00 and his weekly benefits would continue. He further testified that he does not know what is meant by permanent partial disability or maximum medical recovery, and he repeatedly emphasized that no one ever explained to him that the weekly benefits would not continue.
On July 8, 1975, the claimant presented himself to Attorney Thomas Gerity's office, the carrier's attorney who had prepared the papers for a section 9(i) settlement. According to the claimant, he told Attorney Gerity that he could not read and Gerity assured him that he was not going to mess himself up by signing the papers. The claimant states that he then signed the petition and various other forms but did not know what these forms were. He further *699 contends that the contents of these papers were not fully explained to him in terms that he could understand and that he could not read them. He contends that it was still his impression that the weekly benefits would continue and he says that he knew that no one would hire him in his condition.
Attorney Thomas Gerity testified that the Commissioners with the Workmen's Compensation Commission demand that all claimants be fully advised before being brought to the Commission for interview. Accordingly, Mr. Gerity states that he explained the entire petition to the claimant and that the claimant looked over it and then signed it. Mr. Gerity states that he told the claimant that when the Commission approved it that there would be no further medical, hospital or compensation benefits and that the claimant would be out in the cold in the future as for this specific injury. Mr. Gerity further explained that the claimant could claim future benefits if he worked again and had another injury. Mr. Gerity states that the claimant indicated that he understood that it was a complete discharge and that he was anxious to get it all settled. Mr. Gerity computed the figures for the claimant on a calculator based upon a twelve and one-half percent disability rating. However, he did not compute permanent total disability rating for the claimant or explain the meaning of a permanent total disability rating to the claimant. Mr. Gerity explained to the claimant that the rating was based upon Dr. Smith's evaluation and he explained that any disability is reduced by whatever pre-existing condition preceded the accident in question. Mr. Gerity showed the claimant a figure of $4,045.95 which was the computation of a twelve and one-half percent disability rating. Mr. Garity later sent a check and a release to Attorney Otto Wusnack in Gulfport who obtained the claimant's signature on the release and gave the claimant the check for $6,500.00.
Also on July 8, 1975, Attorney Thomas Gerity met with the claimant at the Commission offices so that the claimant could be interviewed by the Commission. On this particular occasion, the Commissioners were out of town and the claimant was interviewed by the Commission's Administrative Assistant, Preston Gough. Throughout this whole proceeding, the claimant had not been represented by an attorney and he met with Mr. Gough and Mr. Gerity for his interview. According to the claimant, Mr. Gough told him that he could not okay the settlement because the claimant was still under a doctor's care and that he had approved one previously under similar circumstances and had gotten in a crack for doing so. The claimant further testified that Mr. Gough did not go over the medical reports with him and stated that he could not approve the settlement; that it would have to be approved by the Commissioners. Claimant states that it was his impression that he would have to go back before the Commissioners later on and he was told that he would be notified when to come back to Jackson.
Administrative Assistant Preston Gough testified that the petition for settlement had already been signed before the claimant came to the Commission and Mr. Gough did not read the petition to the claimant at that time. Mr. Gough testified that he reviewed the medical reports in the file and later recommended that the settlement be approved based upon the evaluation of Dr. Smith. Mr. Gough asked the claimant if he could return to work and the claimant replied that he could not do the same work and left the impression with Mr. Gough that he was trying to find other employment. Mr. Gough further testified that he had been instructed by the Commissioners to advise all claimants in depth about their rights under the Mississippi Workmen's Compensation Act and in keeping with this he explained to the claimant that this was a final settlement based upon the medical rating given by Dr. Smith. Mr. Gough stated as a usual procedure he does not advise claimants that if they have an attorney they might get more money, and he did not explain to this claimant that he had a right to an attorney which might entitle him to more money if the matter were controverted. Mr. Gough advised the claimant what a *700 twelve and one-half percent disability would compute to be, and he states that he did not advise the claimant what a permanent total disability would compute to be. Mr. Gough was of the impression that the claimant understood fully that this would be a final settlement and the claimant was deeply concerned with when he was going to get his money.
On July 9, 1975, Mr. Gough submitted a written recommendation to the Commissioners suggesting that the settlement be approved. This written recommendation was introduced into evidence as Exhibit No. 4. In this recommendation, Mr. Gough explained that Dr. Smith had given the claimant a 25 percent disability rating half of which was attributable to a pre-existing condition. Mr. Gough further showed that the offer of $6,500.00 was in excess of $2,000.00 more than what the twelve and one-half percent was computed to be. In this recommendation, no mention was made of the reports of the claimant's attending physicians and no figures or reference was made to the total disability rating of claimant's attending physicians. Mr. Gough further explained that the claimant understands that this type of settlement will completely close out his claim in reference to this injury and that the claimant was desirous to proceed with the settlement in that manner. On the basis of this recommendation, the Commissioners approved the settlement on July 16, 1975, and the claimant signed a release which was read to him by Attorney Otto Wusnack on July 17, 1975, at which time he was given a check for $6,500.00. On April 21, 1976, the claimant through his attorney, filed a letter/motion to reopen this matter.
A review of the petition for compromise settlement in this matter prepared by the carrier's attorney reveals that the petition fails to set forth the pertinent facts in that it did not reflect that the claimant was still under the care of Dr. Bishop and Dr. Buckley; had not been released by them to return to work; and that in the opinion of Dr. Buckley and Dr. Bishop the claimant remained totally disabled. Furthermore, the petition in Paragraph 4 inaccurately represents that the claimant was released to return to work and had suffered no loss of wage earning capacity. The truth of the matter is that none of the doctors following claimant's surgery, including Dr. Smith, ever released the claimant to return to work, and Dr. Smith's report of March 27, 1975, states that the claimant was in need of further treatment for an unknown period of time. In addition, the claimant at his interview with the Administrative Assistant and also in all of his conversations with the carrier's representative stated that he could not work and has not been able to work since the accident.
It is the opinion of the Administrative Judge that the Mississippi Workmen's Compensation Commission has an obligation to make certain that a claimant is fully advised of his rights under the Act before approving a 9(i) settlement, and this was supposed to have been the purpose of the interview with the claimant in this matter at the Commission offices. However, the carrier, who had access to all the medical reports including the attending physicians' reports, failed to set forth in the petition all the facts, and in fact, misrepresented the facts such as the fact that the claimant had been released to return to work when in fact he had not and that the claimant had experienced no loss in wage earning capacity. Consequently, these matters were never truthfully explained to the claimant and he was not completely advised of his rights under the Act. In fact, no one involved in this matter, including the Commission's Administrative Assistant, ever explained to the claimant that according to his attending physicians he was still totally disabled and would need further care. No one explained that his treating physicians' evaluation of permanent disability might entitle him to more money or that he had a right to hire an attorney to controvert the matter if he disagreed with the amount that the carrier offered for settlement. All that was told the claimant was that based upon Dr. Smith's evaluation he was only entitled to twelve and one-half percent, and he was shown what amount twelve and one-half *701 percent computed to be. He was not told what the maximum amount was that he could receive or that Dr. Buckley's and Dr. Bishop's evaluations computed to the maximum. Furthermore, these deficiencies were not corrected when it was submitted to the Full Commission due to the fact that the recommendation based upon the interview with the claimant only referred to the medical report of Dr. Smith and did not discuss the reports of the attending physicians.
When one considers the low intelligence level of the claimant, the amount of claims experience possessed by the claims representative in this matter, Mrs. Melba Sheppard; the fact that the carrier had possession of the medical reports of the attending physicians and that the claimant was not aware what was contained in those reports, nor was the subject matter of those reports fully explained to the claimant; that he was told that he was only entitled to twelve and one-half percent which was less than the amount being offered; that the petition for a compromise settlement inaccurately reflected the true facts; and in view of the failure of anybody involved to fully explain the rights of the claimant to him, it is obvious that the impression was created in the mind of the claimant that twelve and one-half percent was all that he was entitled to receive and that he could not go wrong by accepting it because he was overpaid. The claimant was a man of low intelligence and with a number of outstanding debts which resulted following his injury and his inability to work, and it is only natural under these circumstances that he would be eager to accept the offer presented. Under the circumstances presented herein, the undersigned is of the opinion that the compromise settlement and the Commission's approval thereof was based upon misrepresentation of facts which allowed the carrier to overreach and take unfair advantage of the claimant herein.
IT IS, THEREFORE, ORDERED that the petition of George Mason, claimant, seeking to reopen this case, be, and the same is, hereby sustained.
On appeal to the full Commission, it held in reversing the administrative judge that "the evidence presented fails to meet the burden of proof required for such a reopening of a claim." The Commission's opinion then went on to set out a history of the case which was essentially the facts related in the order of the administrative judge. The Commission's order further stated the following:
Settlements under Section 9(i) of the Act have become very widely used in recent years due to the fact that they provide a means for litigants engaged in controversy over issues such as the extent of disability or loss of wage earning capacity; the extent to which a pre-existing condition has contributed to disability; or the effect of loss of wage-earning capacity; to bring litigation to a final conclusion without the necessity of conducting a full hearing. In this regard, the full Commission notes that it devotes two full days per week specifically investigating the terms of such proposed settlements, with the result that nearly 100 settlements per month are investigated by the Commission. Upon receiving a compromise settlement petition, one of the Commissioners, or an administrative judge or administrative assistant authorized by the Commission, interviews the claimant to determine if the settlement is in the claimant's best interest. In every case, the proposed settlement is explored in detail by the Commission and all medical reports in the file are examined to determine if the amount of the proposed settlement appears fair and reasonable. If the Commission considers that the proposed settlement is not accurately reported, is not completely understood, or is not in the best interest of the claimant, then approval of the settlement is withheld. If the Commission finds nothing objectionable about the terms or amount of the proposed settlement, and is satisfied that the claimant understands its import and effect and believes that it would be to the claimant's best interest, a compromise settlement is authorized.

*702 In the instant case, the full Commission is of the opinion that the decision of the Supreme Court in the case of Dixon v. Green, 240 Miss. 204, 127 So.2d 662 (1961), is controlling.
The Commission also quoted sections from the textbooks of Dunn, Mississippi Workmen's Compensation, and Larson on Workmen's Compensation. The Commission's opinion further stated:
In the instant case, however, no finding was made by the Administrative Judge that the consideration paid the claimant was inadequate. Further, claimant offered no proof that he was still under a doctor's care on the date of the settlement and no proof that he did not know the extent of his injuries. Finally, no corroborating evidence was offered by the claimant, to support his allegation that he did not understand that he was completely releasing his claim by accepting the employer-carrier's offer. In contrast, the memorandum prepared by Mr. Gough, an impartial Commission employee, immediately after the claimant's interview establishes the following facts: (1) The claimant was aware that Dr. Smith had rated him 25% permanently partially disabled, with a 12 1/2% impairment attributable to a pre-existing condition; (2) the claimant understood his medical condition, stated that he believed himself to be disabled, but volunteered that he did intend to return to some type of work in the future; (3) the claimant was not under any medical treatment at the time of the settlement; (4) the claimant understood that accepting the settlement would completely close out his claim, and (5) despite his announced belief that he was disabled, the claimant urged approval of the settlement ...
The testimony of Mrs. Sheppard, Mr. Gerity and Mr. Gough, supported by Mr. Gough's memorandum, and opposed only by the claimant's self-serving oral testimony, constitutes clear and sufficient evidence that the claimant understood the settlement and voluntarily decided to abandon his claim of total disability  a decision compatible with the 25% medical rating  and accept the employer/carrier's offer. To allow a settlement to be set aside on such evidence would be tantamount to allowing any claimant who becomes disenchanted with the amount he received to reopen his case by simply stating that he did not understand that he would receive no further benefits after the approval of the settlement.
To give credence to claimant's testimony regarding the circumstances attendant to his approval of the settlement would be to totally reject the testimony of the other witnesses in this cause. The claimant has not demonstrated that the settlement was procured by fraud or undue advantage on the part of the employer. As such, his petition to reopen the claim must be, and is, denied and dismissed with prejudice.
Therefore, for the reasons previously set forth, the Full Commission declines to accept the findings of the Administrative Judge and offers this opinion in lieu of the ORDER OF ADMINISTRATIVE JUDGE dated January 9, 1978.
On appeal to the circuit court, the judge obviously made a thorough study of the cause after receiving arguments and briefs from the attorneys involved. Excerpts from the opinion of the circuit judge are as follows:
The Court has carefully read the record, studied exhibits and briefs of counsel, and did a considerable amount of research on its own. It is with a great deal of reluctance that the Court reverses an Order of the Workmen's Compensation Commission, but in this case it appears that there is no substantial dispute as to the facts and to allow the Order of the Commission to stand would deprive Claimant of the beneficent purpose of the statute. The Court finds it hard to believe that one properly informed would compromise for less than he is obviously entitled. It is clearly revealed by the record that this is what the Claimant did.
While there is no substantial dispute in the evidence, the Court feels that a brief review of the facts would be in order. It is *703 admitted that the Claimant was injured in the course of his employment. Compensability was recognized, voluntary payments were made, and medical treatment provided. The treating physicians initially had some doubt as to the degree of injury, but on June 26, 1974, some six months after the date of the injury, Dr. Buckley performed an operation on Claimant's back. Dr. Buckley, along with Dr. Bishop, apparently continued to treat the Claimant because on February 20, 1975, both of them filed with the Commission a report entitled "Final Medical Report," however, both doctors had written on the form that the same was "Intermittent." They both agreed that he was totally disabled at that time.
After the reports of Doctors Buckley and Bishop were received, an adjuster for the Carrier arranged for the Claimant to be seen by a Dr. Smith in Jackson. Dr. Smith reported to the adjuster on March 26, 1975, and made no report as to Claimant's degree of disability, however, it is significant that the doctor made the following statement: "He never had any prior history of back injury or other injury of significance." On April 16, 1975, Dr. Smith made a "Final Medical Report" to the Commission which stated nothing except a negative answer to the following question: "Was there any permanent injury or serious disfigurement?" However, Dr. Smith, on the 3rd day of July, 1975, made another "Final Medical Report" to the Commission wherein he gave an affirmative response to the above question and in explanation of his answer wrote the following: "25% based on the body as a whole, 1/2 of 25% may have pre-existed his described injury." The doctor only saw the Claimant one time.
Also, on July 30, 1975, Dr. Smith conveyed by letter the above information to the adjuster. This letter, after stating that there was a 25% disability to the body as a whole, stated the following: "However, I strongly suspect that his problem began some years prior to this injury." Twelve and one-half percent (12-1/2%) was then delineated as the degree of disability. Immediately after receiving this letter, the adjuster commenced the negotiation for the compromise settlement, even though none of the doctors had reported that he was able to work.
The Claimant was directed to the law office of Carrier's attorney in Jackson on July 8, 1975, where he signed the Petition for Compromise Settlement and was then taken by the attorney to the office of the Commission were a hearing was conducted by an Administrative Assistant, who on the next day recommended the settlement. The Commission, on July 16, 1975, approved the settlement. The petition contained several inaccurate statements which include the following statements that the claimant was released to return to work and that he had suffered no loss of wage earning capacity. Dr. Smith had found that one half of his 25% permanent partial disability to the body as a whole was attributable to a pre-existing condition. Dr. Smith made no such finding. He simply suspected it, and suspicion even by an expert is not evidence. The Petition finally concludes that the settlement is in Plaintiff's best interest.
It is agreed that no one ever reviewed with the Claimant the reports of Doctors Bishop and Buckley, nor explained to him how much he could receive as one totally disabled or even at 25%, nor is it disputed that the Claimant is an uneducated black man who had no counsel, or that he remains totally disabled.
This Court has never reversed an Order of the Commission where based upon substantial evidence, but in deference finds that the Commission did not require that the proposed settlement be accurately reported, completely understood, and in the best interest of the Claimant as stated in its opinion. The Court sympathizes with the Commission because of its tremendous workload, but at the same time the Court has the obligation to give the Claimant the benefit of a full judicial review.
Here, the Administrative Judge found that the case should be reopened. The Commission declined to approve his order on jurisdictional grounds. Section 71-3-53, Mississippi Code of 1972, entitled "Continuing *704 Jurisdiction of the Commission," reads as follows:
"Upon its own initiative or upon the application of any party in interest on the ground of a change in conditions or because of a mistake in determination of fact, the commission may, at any time prior to one (1) year after the date of the last payment of compensation, whether or not a compensation order has been issued, at any time prior to one (1) year after the rejection of a claim, review a compensation case, issue a new compensation order which may terminate, continue, reinstate, increase, or decrease such compensation, or award compensation. Such new order shall not affect any compensation previously paid, except that an award increasing the compensation rate may be made effective from the date of the injury; and if any part of the compensation due or to become due is unpaid, an award decreasing the compensation rate may be made effective from the date of the injury, and any payment made prior thereto in excess of such decreased rate shall be deducted from any unpaid compensation in such manner and by such method as may be determined by the commission." [Emphasis supplied].
The settlement here was effected under Section 71-3-29, Mississippi Code of 1972 (Section 9i of the Act). It has been held commuted lump sum payments under Section 13 of the Act do not preclude a reopening of a case for a redetermination of the benefits. The Court in Dixon v. Green, 240 Miss. 204, 127 So.2d 662, denied a reopening under 9i, but in that case it was found that the claim was doubtful and that it was also doubtful as to whether the Claimant had healed. Also, the Claimant, as the statute requires, talked to a member of the Commission. The Court did not reach the question as to whether Section 71-3-53, supra, authorized the reopening of a compensation case under the factual situation we have here. There was no showing of fraud or unfair advantage.
This Court can see no justifiable reason for drawing a distinction between compromise settlements and commuted lump sum settlements because both in effect are compromises. Section 71-3-53, supra, draws no distinction between the two and was apparently intended to give the Commission continuing jurisdiction to correct mistakes, and it may do so even on its own initiative not only for a change in conditions but "because of a mistake in determination of fact." Section 71-3-29 provides that compromise settlements shall not be made "except when determined to be in the best interest of the injured worker." As stated at the outset, the settlement obviously was not in the worker's best interest, therefore, the Commission did make a mistake in the determination of a fact when it concluded in its Order that the settlement was in the Claimant's best interest. The evidence before it totally refuted any such conclusion. There was not a scintilla of evidence to support this finding. In 3 Larson, The Law of Workmen's Compensation § 581.52, we find the following:
"A number of statutes have extended the power of reopening beyond change of condition by express statute. Such statutes sometimes specify additional grounds such as mistake, or particular mistakes ... the concept of `mistake' requires careful interpretation. It is clear that an allegation of mistake should not be allowed to become a backdoor route to re-trying a case because one party thinks he can make a better showing on the second attempt ... The kind of mistake that will warrant reopening is ordinarily a mistake on the part of the fact finder, not on part of one of the witnesses." [Emphasis supplied]."
Professor Larson, after reviewing cases interpreting the Longshoremen's and Harbor Workers' Act, which permit reopening because of mistake in determination of fact even if the mistake be as to liability, states the following:
"In view of the practical protective function of Workmen's Compensation, the desirability of preserving a right to reopen for genuine mistake seems too self-evident for argument. In the nature of things, there are bound to be many occasions when even the most thorough and skillful diagnosis *705 misses some hidden compensable condition, either by award of settlement, when the only fault lies in the imperfections of medical science. [Emphasis supplied]."
The Court has no doubt that the Claimant understood at the time of the compromise that $6,500 was to be the full amount coming to him, but the evidence is clear that he never understood that he was entitled to more. The Workmen's Compensation Act is remedial and a liberal interpretation is required to carry out that purpose, therefore, a finding that a settlement is in the worker's best interest must be supported by substantial evidence. Certainly, it cannot be totally refuted by the evidence and allowed to stand.
Parker v. Howarth (Miss.) 340 So.2d 434, is cited in support of the Order of the Commission. The case is a common law case which vitiated a compromise settlement. The Court does not understand that common law cases are persuasive. The Workmen's Compensation Act supplanted a worker's common law right. However, by way of analogy, the facts in Parker v. Howarth are more closely analogous than those in Dickson v. Green, supra. Of course, in a common law case, proof of fraud or unfair advantage must be by clear and convincing evidence. This is not the question here. This is a review of the decision of the Commission. Certainly, the court should not reverse where the Commission's findings are supported by substantial evidence, but when the reviewing Court is convinced that a mistake has been made by the Commission in its findings of fact and in its application of the Act, then it should reverse. Evans v. Continental Grain Company (Miss.) 372 So.2d 265.
As Professor Larson stated, there are bound to be many occasions when thorough and skillful diagnosis (referring to doctors) misses some hidden compensable condition. Certainly, under the hurried conditions that the Commission is forced to work there are bound to be mistakes in determination of facts even when the positions are occupied by competent men. This is the reason for judicial review.
Section One of the Act provides that the Commission has the duty to an injured worker to restore him to health and vocational opportunity. Certainly the Legislature intended for the Commission to be empowered to correct its own mistake, and particularly when it is shown that the Commission and the worker acted because of an unfair advantage on the part of the Carrier. The record here leads to this conclusion.
It is now the duty of this Court to decide whether or not the circuit court had sufficient law and facts to hold that the Workmen's Compensation Commission's order was manifestly erroneous. Appellants, in addition to the language of the statutes involved, rely primarily on the case of Dixon v. Green, 240 Miss. 204, 127 So.2d 662 (1961). There the injured employee suffered a subarachnoid hemorrhage. Medical expenses and temporary total disability were paid for fifteen weeks. After negotiations, the claimant and the carrier filed with the Commission a joint petition for approval of a compromise settlement for $1,000. The chairman of the Commission personally interviewed the claimant and fully advised him of his rights. The money was paid and a release was executed by the claimant. Within the one-year statutory period [Mississippi Code Annotated section 71-3-53 (1972)], the claimant filed a petition to reopen his claim. The petition was denied by the hearing officer, the full Commission, and the circuit court. This Court, in affirming that action, stated:
... The Commission found it was not possible to determine the exact extent of disability to claimant's back and head. The record reflects that appellant was well aware of the existence of a doubtful claim as to whether he still had a compensable disability, connected with the accident; or whether the employment injury had ended and there remained only a condition predating the accident. One of the members of the Commission talked with claimant about the effect of a settlement. He knowingly signed the application for a compromise settlement, and the agreement, with full cognizance of its *706 import. The Commission reviewed in detail the petition for settlement, and approved it. Appellant failed to show any fraud by appellees or unfair advantage by them. He knew what he was doing. Hence the Commission was manifestly correct in refusing to set aside its order of approval and the compromise.

For these reasons we do not reach the question of whether Sec. 21 of the Act, authorizing reopening of a compensation case for changed conditions or mistake, could apply under other and different circumstances. [Emphasis supplied].
In the later case of Armstrong Tire & Rubber Company v. Franks, 242 Miss. 792, 137 So.2d 141 (1962), the Court had before it the question of whether or not the Workmen's Compensation Commission abused its discretion in reopening a claim involving a commuted lump sum payment under section 13(j) of the Act [Code § 71-3-37]. The Court, in discussing the fact that the case involved only a lump sum settlement, said:
In Dixon v. Green, 240 Miss. 204, 127 So.2d 662 (1961), this Court affirmed a refusal by the commission to reopen a compromise settlement of a claim where the schedules were not applicable and it was not possible to determine the exact extent of disability. That compromise was based on Sec. 9(i). The Court pretermitted the question of whether Sec. 21 would apply to a 9(i) compromise. [Emphasis supplied].
In discussing the present appeal, we need to bear in mind that the primary question involved is whether or not the cause may be reopened under Section 21 of the Act [Code § 71-3-53], which limits the review to a period of one year after the date of the last payment of compensation. As hereinbefore pointed out, the present petition to reopen was well within this limitation period.
There are several either undisputed or practically undisputed facts that stand out at the threshold in considering this appeal. Most of them have already been discussed in the hereinbefore quotes from opinions of the administrative judge and the circuit judge. At all times the claimant was a resident of Gulfport, Mississippi, was employed there, received his injury there, and received all his medical treatment there. The primary treatment and the surgical procedures and follow-up treatment were done by Drs. Bishop and Buckley of Gulfport. On February 20, 1975, just a little over a month prior to the examination by Dr. Smith in Jackson, both Dr. Bishop and Dr. Buckley filed forms with the Commission and the carrier's adjusting representative which stated positively that the appellee was "totally disabled at this time." Soon thereafter, the representative of Underwriter's Adjusting Company, an employee with over twenty-eight years' experience, who was handling the matter, talked with appellee by telephone and arranged for him to come to Jackson to be examined by Dr. Smith. This examination was performed on March 26, 1975, and was the only examination and the only time Dr. Smith ever saw appellee. In his records, as the result of that examination, Dr. Smith stated positively that appellee had not recovered and that "I would like to review his records." There is no evidence that this was ever done.
By report dated March 27, the day after the examination by Dr. Smith, he stated that it was "undetermined" when appellee would be able to resume even light work. Another report then was sent in by Dr. Smith dated April 16, 1975, wherein the question, "Was there any permanent injury or serious disfigurement?" was asked, and the answer was "No." Then by another report dated July 3, 1975, over three months after his examination, Dr. Smith stated that appellee had a twenty-five percent permanent disability based on the body as a whole and "one-half of 25% may have pre-existed his described injury." [Emphasis ours].
After receiving the July report, the claims adjuster called appellee, advising him that his medical permanent disability growing out of the accident was twelve and one-half percent; that appellee could take the compensation based on this percentage over a period of 450 weeks or could take it in a "lump sum." In the event he chose the *707 latter, the adjuster advised him that he would be paid a total of $6,500, which was $2,000 over what Dr. Smith said his permanent partial disability would be. The illiterate claimant obviously was anxious to accept this offer as he was in need of funds.
All the instruments prepared by carrier's representative were purportedly and apparently based on the matter being concluded under a section 9(i) settlement; however, in reading the above set out testimony of the claims adjuster, it, in reality, was concluding the claim as a "lump sum." We do not hold that this was a "lump sum" settlement under section 13(j) of the Workmen's Compensation Act, but the manner in which it was done should be considered in determining the primary question before us.
The illiterate appellee stated that he did not know what was in the most recent reports of his attending physicians, Drs. Bishop and Buckley. The experienced insurance adjuster's testimony was hazy and indefinite on whether or not she called appellee's attention to the opinion of his attending physicians that he was totally disabled at the time. She did not even remember what those reports revealed. A reading of the record leaves only a conclusion that the principal matter discussed with appellee was that the examining doctor in Jackson gave him a twelve and one-half percent permanent partial disability to the body as a whole, although the adjuster had in her file the surgeon's statement that appellee was totally disabled at the time.
The administrative judge found as a fact that the petition for settlement prepared by the carrier failed to set forth material facts necessary for the petition to be passed on by the Commission. In this connection, it should be borne in mind that the matter was presented to a young administrative assistant in the Commission's office and not to one of the Commissioners, although conceding that no Commissioner was in the office at the time. As stated by the administrative judge, the record practically is undisputed that no one advised appellee that he was totally disabled medically at the time, according to his treating physicians and surgeon. The administrative judge held as a fact that appellee was "over-reached" and that the carrier took "unfair advantage of the claimant herein."
The opinion of the full Commission reversing the administrative judge was based primarily on its conclusions of law. As do appellants here, the full Commission relied on Dixon v. Green, supra, in holding that as a matter of law appellee could not take advantage of Section 21 of the Compensation Act as he did not clearly and convincingly prove fraud.
The circuit court, in reviewing the Commission's findings of law and fact as required by statute, and, as stated by this Court, reluctantly found that the legal and factual findings of the Commission were manifestly wrong. As hereinbefore stated in this opinion, there is practically no dispute by inference or otherwise that at the time of the alleged settlement appellee knew that he was totally disabled. This is borne out by the circuit judge's statements in his opinion to the effect that "the court finds it hard to believe that one properly informed would compromise for less than what he is obviously entitled. It is clearly revealed by the record that this is what the claimant did."
As stated by the circuit judge, section 21 of the Compensation Act provides that within one year from the date of the last payment of compensation, the commission, upon the application of any party in interest, may apply for the cause to be reopened "because of a mistake in determination of fact." This certainly means a mistake in the determination of fact by the Commission as stated by the lower court. The lower court then made a positive finding that the full Commission, in approving the alleged settlement, was mistaken in that it was not to the best interest of the worker as required by Code section 71-3-29, and as stated in the Commission's order.
The lower court further found that the mistake of the Commission was caused by the worker acting "because of an unfair advantage on the part of the carrier; the *708 record here leads to this conclusion." As heretofore quoted from the Dixon case, supra, we held there that "appellant failed to show any fraud by appellees or unfair advantage by them." The lower court held as a fact that the purported "settlement" was not sufficiently analyzed by the Commission and that the Commission made a mistake in approving the section 9(i) settlement because facts were not given the Commission which would have shown that unfair advantage had been taken of appellee.
We find nothing in the record as applied to the law set out above which would justify this Court in saying that the circuit court committed error in its findings. Therefore, it follows that the cause should be affirmed and remanded to the Workmen's Compensation Commission for further proceedings.
The case was considered by a conference of the Judges en banc.
AFFIRMED AND REMANDED TO THE WORKMEN'S COMPENSATION COMMISSION.
PATTERSON, C.J., AND SUGG, LEE and HAWKINS, JJ., concur.
ROBERTSON and SMITH, P. JJ., and WALKER and BROOM, JJ., dissent.
ROBERTSON, Presiding Justice, dissenting:
I am unable to agree with the majority opinion affirming the order of the Circuit Court of Harrison County reversing the order of the Workmen's Compensation Commission. The Commission's order sustained a motion to dismiss the petition of George Mason to reopen the $6500 compromise settlement of his claim effected under section 9(i) of the Workmen's Compensation law [MCA § 71-3-29 (1972)].
Mississippi Code Annotated section 71-3-29 (1972) provides:
"Rules of the commission shall govern compromise payments where the prescribed schedules are not applicable and which, in its discretion, may be made in cases where it is not possible to determine the exact extent of disability, as for example in certain injuries to the back or head. The commission shall also have full authority to adjudicate the disposition of death claims. Commutation and lump sum settlement payments shall be governed by rules of the commission, and shall not be made except when determined to be in the best interest of the injured worker or his dependents, the commission having final authority in such questions." (Emphasis added).
George Mason's injury was to his back, so it fit within this language of the statute:
"[W]here the prescribed schedules are not applicable and which, in its discretion, may be made in cases where it is not possible to determine the exact extent of disability, as for example in certain injuries to the back or head." (Emphasis added).
The Legislature, in its wisdom, created the Workmen's Compensation Commission and placed on it the solemn duty and responsibility of administering the Workmen's Compensation law [MCA § 71-3-1 (1972)]. Theirs alone is the duty and responsibility of passing on and adjudicating compromise settlements. This language of the Legislature bears repeating: "Rules of the commission shall govern compromise payments ... the commission having final authority in such questions."
Mason, on July 8, 1975, filed his personally signed and sworn to "Petition for Compromise Settlement". His medical treatment and back surgery by Drs. Mitchell, Bishop and Buckley were accurately and faithfully set forth in his sworn Petition. His last examination by Dr. Robert R. Smith of the University Medical Center was included in his Petition.
Mason's Petition included this language:
"3. That the employer/carrier accepted responsibility for the injury and paid temporary total benefits in the amount of $4200.00, and has paid medical, hospital and other expenses on his behalf in the amount of $3004.64.
"4. That claimant alleges that he is due additional compensation for temporary total, permanent partial, medical, *709 and other benefits provided by the Act. The employer/carrier has denied and disputed any further claim for benefits since claimant was released to return to work and he has suffered no loss of wage-earning capacity. That it is impossible to determine the exact extent or degree of his present disability alleged to be attributable to the said injury and therefore this is a proper case for the application of Section 9(i) of the Act.
"5. That the employer/carrier, without any admission of liability, and in order to avoid further litigation, has offered to pay the claimant the sum of Sixty Five Hundred ($6500.00) Dollars, for a full and final compromise settlement and an accord and satisfaction of disputed claims, whether said claims are known or unknown at this time, and which are due or may become due under the terms of the Act. That claimant shall pay and assume any and all medical, hospital, or other expenses that he may desire or require for the treatment of said condition in the future, whether the necessity therefor is known or unknown at this time.
"6. That the proposed settlement would be to the best interest of claimant, and is a fair and reasonable settlement of his claim for benefits. That claimant desires said payment in a lump sum in order to meet certain personal expenses that have accrued during his disability." (Emphasis added).
On July 16, 1975, the full Commission entered its Order approving the compromise settlement requested in writing and under oath by Mason. Among other things, this Order adjudicated:
"That the proposed settlement would be to the best interest of claimant, and is a fair and reasonable settlement of his claim for benefits. That claimant desires said payment in a lump sum in order to meet certain personal expenses that have accrued during his disability. (Emphasis added).
"IT IS, THEREFORE, ORDERED that the proposed compromise settlement is hereby approved; the employer/carrier is authorized to pay claimant the sum of Sixty Five Hundred ($6500.00) Dollars, said payment to constitute a full and final settlement, an accord and satisfaction of disputed claims, and a final compromise settlement of any and all claims of every type and nature which have accrued or may accrue to claimant, and arising out of said accident, whether the claims therefor are known or unknown at this time. That claimant shall assume and pay any and all additional medical, hospital or other expenses that he may incur or desire for the treatment of said condition, or any complications resulting therefrom. That claimant is authorized to execute a good, valid and binding release to the employer/carrier herein; and except as to the payment to be made claimant under and pursuant to this order, that any and all further claims are hereby denied, and the employer/carrier is fully and finally discharged."
When the $6500 payment was made to Mason on July 17, 1975, he personally signed Workmen's Compensation Commission Form B-31 styled "Final Report and Settlement Receipt." This form in its itemization, showed the payment of 75 weeks of temporary total disability, totaling $4,200; hospital expense $5,321.14; medical expense $1305; other $178.49. With the $6500, the total paid by the insurance carrier was listed as $17,504.64. Executed Form B-31 was promptly returned to the Commission. On July 17, 1975, Mason personally signed and acknowledged before a Notary Public a very full and detailed "Release of All Claims" for the insurance carrier. This Release provided:
"As a result of said accident and his resulting injuries he made claim for benefits under the terms of the Mississippi Workmen's Compensation Act. That there is a dispute between the claimant and the employer/carrier as to the cause and extent of his present disability, if any, and whether or not it has affected his wage-earning capacity. That this payment is accepted as a full and final compromise settlement, an accord and *710 satisfaction of disputed claims, and a final payment of any and all claims under the terms of the Act, and which have accrued or may later accrue to claimant and arising out of said accident, whether known or unknown at this time. That this release shall fully cover all claims for medical, hospital or other expenses for the treatment of any condition arising out of said accident, whether the necessity therefor is known or unknown at this time. (Emphasis added).
"That this release shall bind the claimant, his heirs, executors, administrators, or assigns, and claimant does hereby accept the payment noted herein as a full and final determination of all rights incident to his claim for benefits under the terms of the Mississippi Workmen's Compensation Act.
"That this settlement and release have been approved by a final order of the Mississippi Workmen's Compensation Commission in Cause No. 74 00467, and the undersigned does covenant not to assert any further claims against said employer/carrier or attempt to reopen said cause in any manner, for the considerations herein paid." (Emphasis added).
On April 19, 1976, nine months after Mason had executed a full Receipt, Release and Accord and Satisfaction (and apparently after he had spent the $6500 settlement) in violation of his covenant and contract he filed a Petition to Reopen his Claim. His Petition to Reopen was referred by the Commission to one of its administrative judges. That judge thought that the claim should be reopened.
In its opinion and order reversing the administrative judge, the full Commission said:
"The above styled cause was heard on review by the Full Commission in its offices in Jackson, Mississippi, on July 17, 1978, upon the employer-carrier's PETITION FOR REVIEW.
"Having considered the oral and written arguments submitted on behalf of the parties, and having thoroughly studied the record and the applicable law, and having fully considered same, it is the opinion of the Full Commission that the particular facts attendant to this cause do not merit the adoption of the conclusions contained in the ORDER OF ADMINISTRATIVE JUDGE dated January 9, 1978. Accordingly, the Full Commission offers this opinion in lieu of the ORDER OF ADMINISTRATIVE JUDGE and finds that the employer-carrier's MOTION TO DISMISS is well-taken and should be, and is hereby, sustained.
"The primary issue before the Full Commission upon review is whether a compromise settlement effected under Section 9(i) of the Workmen's Compensation Law, as amended, being Mississippi Code Annotated, Section 71-3-29 (1972), should be set aside and the claim reopened. Having considered the record as a whole, that is the history, attendant circumstances, and reasonable inferences therefrom, the Full Commission finds that the evidence presented fails to meet the burden of proof required for such a reopening of a claim.
"Evidence adduced at the hearing of this cause established that the claimant sustained a compensable back injury while in the course and scope of his employment on December 20, 1973. At the time of injury, claimant's average weekly wage was $112.50. Dr. R.A. Mitchell, of the Garden Park Community Hospital, first treated claimant for an acute strain of his right hip. Dr. Mitchell reported that claimant had sustained no permanent disability as a result of the injury and advised that claimant would be able to return to his regular employment on January 7, 1974. On February 7, 1974, Dr. Mitchell referred the claimant to Dr. Hal D. Bishop of the Coastal Medical Center in Biloxi, Mississippi. Dr. Bishop diagnosed claimant's condition as herniated disc, and in turn, referred claimant to Dr. Richard E. Buckley. Dr. Buckley hospitalized the claimant for diagnostic studies on March 10, 1974, and discharged him on March 18, 1974, with a diagnosis of a herniated disc between L-4 and L-5, and an apparent previous compression fracture at the L-3 level. Subsequently, surgery was performed by Dr. Buckley on the claimant *711 and on June 26, 1974, Dr. Buckley reported that the claimant would probably obtain the maximum benefit of medical treatment in four to six months. The last medical report by Dr. Buckley, dated February 20, 1975, stated that the claimant was `totally disabled at this time'. (Emphasis added).
"At the instance of the employer-carrier, claimant was examined by Dr. Robert R. Smith, neurosurgeon, in March of 1975. Thereafter, on June 30, 1975, Dr. Smith reported that the claimant had a permanent partial disability of 25% to the body as a whole, one-half of which was attributable to a pre-existing condition. Following Dr. Smith's report, negotiations for a possible settlement began between the claimant and Mrs. Melba Sheppard, an insurance adjuster for the Continental Insurance Company. At this point, the employer-carrier had paid the claimant 75 weeks of temporary total disability benefits at the rate of $56.00 per week, in addition to medical, hospital and other benefits in the sum of $6,804.61. Mrs. Sheppard offered to settle the claim for $6,500.00, based upon Dr. Smith's report that the claimant had sustained a 12 1/2% permanent partial impairment as a result of his December 20, 1973, injury. Mrs. Sheppard testified that during this telephone conversation she advised the claimant the offer was based upon Dr. Smith's report of 12 1/2 permanent partial disability, and that he could either take a full settlement under Section 9(i) of the Act, or elect to take his compensation at a certain amount per week for 450 weeks. It was further the testimony of Mrs. Sheppard that she fully explained to claimant the import and effect of the settlement, and that the claimant told her that he wanted to accept the settlement and would like the matter to be concluded as quickly as possible. (Emphasis added).
"Following this conversation, Mrs. Sheppard contacted a law firm to draft the necessary settlement papers and take the claimant to the Workmen's Compensation Commission offices for an interview. On July 8, 1975, claimant presented himself at the offices of Thomas C. Gerity, the attorney retained by Mrs. Sheppard to conduct the settlement, and signed the petition for a section 9(i) settlement. Mr. Gerity testified that he reviewed and explained all the settlement papers to the claimant in his office. He further testified that the claimant stated that he understood that the settlement would completely `wash out' his compensation claim. Following the signing of the petition before a Notary Public, the claimant and Mr. Gerity went to the Commission offices where the claimant was interviewed by Mr. Preston Gough, the Commission's Administrative Assistant. The claimant was interviewed by Mr. Gough due to the fact that the Commissioners were out of town attending a Workmen's Compensation Conference. In this respect, it is to be noted that Mr. Gough had been previously authorized to conduct such settlement interviews by the Commission, and had done so in the past and since on numerous occasions. It was the testimony of Mr. Gough that he explained the import and effect of the settlement to the claimant, interrogated him on his understanding of the settlement, and otherwise assured himself that claimant understood what he was doing and further that the settlement would be in his best interest. Immediately following the interview, the following memorandum was dictated by Mr. Gough to the Commission: (Emphasis added).
`On July 8, 1975, Honorable Thomas C. Gerity brought the claimant in for an interview regarding this proposed compromise settlement. The claimant was given a 25% permanent partial disability rating to the body as a whole by Dr. Robert R. Smith, with 12 1/2% of the disability attributable to a pre-existing condition. Using the claimant's average weekly wage of $112.50, the medical rating would calculate to $4,218.75. Mr. Mason stated to me that he has not returned to work since the accident and he was a truck driver and he does not believe he will be able to do this type of work again. Mr. Mason gave me the impression that he will probably return to some type of work in the near future, although, as stated above, he stated that he could not work. The amount of this proposed settlement *712 is $6,500.00, which would figure to over $2,000.00 above the medical rating. Mr. Mason is not seeing any doctors at this time and explained to me that all his medical bills had been paid. He fully understands that this type settlement will completely close out his claim in reference to this particular injury and still desires to proceed with his settlement in this manner. (Emphasis added).
`I would, therefore, recommend approval of this settlement.
 Preston H. Gough, Jr.,
 Administrative Assistant.'
"On July 16, 1975, on the basis of Mr. Gough's memorandum, all three Commissioners, after making such investigation as deemed necessary to satisfy each of them, approved this settlement and signed an Order authorizing the claimant to conclude his claim for the sum of $6,500.00, thereby releasing the employer-carrier from further liability. Thereafter, Mr. Gerity sent the release and Form B-31 to Mr. Otto Wusnack, a Gulfport attorney, along with a settlement draft in the amount of $6,500.00. By letter, Mr. Gerity directed the claimant to contact Mr. Wusnack to sign the remaining settlement papers and collect the draft. Mr. Wusnack testified that claimant arranged an appointment with him to complete the settlement and, at the appointed time, appeared with his wife. It was further the testimony of Mr. Wusnack that he read the entire release to the claimant and, after claimant indicated that he understood, obtained claimant's signatures on the release and final report and settlement receipt in return for the $6,500.00 draft. It was the impression of Mr. Wusnack that claimant was very anxious to get the check and never indicated to him that he had any difficulty reading or writing or understanding or that he was to receive the draft for anything other than a full settlement of the claim. (Emphasis added).
"Approximately 9 months elapsed before the Commission received a letter from claimant's attorney on April 19, 1976, requesting that the file be reopened. The Commission regarded this letter as a motion to set aside the settlement and reopen the claim and accordingly assigned the cause to an Administrative Judge. In response thereto, there was filed with the Commission the employer-carrier's MOTION TO DISMISS.
The Full Commission notes that no allegation of fraud concerning the conclusion of the settlement was raised in the letter from claimant's attorney, nor was any such allegation made at the hearing before the Administrative Judge. Rather, the claimant testified that he had somehow been deceived by Mrs. Sheppard, Mr. Gerity, Mr. Gough, and Mr. Wusnack, and that he should be allowed to reopen his compensation claim. Claimant further testified that Dr. Bishop and Dr. Buckley had never released him from treatment, and that Mrs. Sheppard offered to pay him the $6,500.00 only to `get him out of a bind,' and only on the condition that his bi-monthly benefit payments would continue. The claimant denied that Mrs. Sheppard told him anything about the effect of the settlement and further denied that Mr. Gerity told him anything other than he `couldn't go wrong' by signing the papers presented to him. The claimant also denied that Mr. Gough or Mr. Wusnack explained the import and effect of the settlement and release to him. It was the testimony of the claimant that he was unable to read and write, did not understand anything that he signed, and took the draft in the belief that his benefit payments would continue. As is apparent, substantial conflict exists between testimony of the claimant and that of the other parties.
... .
"in Dunn, Mississippi Workmen's Compensation, Sections 311 and 312, 2d ed., (1966), the operation of Section 9(i) has been explained as follows:
`After a claim has accrued, a release of benefits is invalid except as approved by the Commission or by the court on appeal. Approval by the Commission is limited to certain types of cases, as where (1) the prescribed schedules are not applicable, and (2) it is not possible to determine the *713 exact extent of disability and (3) it is determined to be for the best interest of the employee or his dependents.
`[W]hen the case is pending before the Commission, compromise settlements are governed by the Act to the extent that no authority is granted for the approval of compromise payments except when the schedules are not applicable and it is not possible to determine the exact extent of disability and in death cases. Except in death cases, there is no provision for the approval of settlements based upon a dispute over the question of liability or the payments of any benefits at all. Thus, the Commission may not allow a settlement in the case of the loss of a scheduled member, such as a leg, an amputation, but may allow a settlement where there is only a partial loss of use of the member and it is not possible to determine the exact degree of loss. Injuries to the head and back are mentioned in the Act as examples of instances where settlements may usually be allowed by the Commission, because of the impossibility, in most cases, of determining the exact extent of disability resulting from these injuries, but, of course, other types of non-scheduled injuries are not excluded.'
"Settlements under Section 9(i) of the Act have become very widely used in recent years due to the fact that they provide a means for litigants engaged in controversy over issues such as the extent of disability or loss of wage earning capacity; the extent to which a pre-existing condition has contributed to disability; or the effect of loss or wage-earning capacity; to bring litigation to a final conclusion without the necessity of conducting a full hearing. In this regard, the Full Commission notes that it devotes two full days per week specifically investigating the terms of such proposed settlements, with the result that nearly 100 settlements per month are investigated by the Commission. Upon receiving a compromise settlement petition, one of the Commissioners, or an Administrative Judge or Administrative Assistant authorized by the Commission, interviews the claimant to determine if the settlement is in the claimant's best interest. In every case, the proposed settlement is explored in detail by the Commission and all medical reports in the file are examined to determine if the amount of the proposed settlement appears fair and reasonable. If the Commission considers that the proposed settlement is not accurately reported, is not completely understood, or is not in the best interest of the claimant, then approval of the settlement is withheld. If the Commission finds nothing objectionable about the terms or amount of the proposed settlement, and is satisfied that the claimant understands its import and effect and believes that it would be to the claimant's best interest; a compromise settlement is authorized. (Emphasis added).
"In the instant case, the Full Commission is of the opinion that the decision of the Supreme court in the case of Dixon v. Green, 240 Miss. 204, 127 So.2d 662 (1961) is controlling. This is the only reported case in this state in which a claimant, after effecting a 9(i) compromise settlement, sought to overturn it and reopen his claim for benefits. The Attorney Referee, the Full Commission, the Circuit Court, and the Supreme Court refused to allow the settlement to be set aside. In its opinion, the Supreme Court stated, to wit:
`The prescribed schedules were not applicable here. The Commission found it was not possible to determine the exact extent of disability to the claimant's back and head. The record reflects that appellant was well aware of the existence of a doubtful claim as to whether he still had a compensable disability, connected with the accident; or whether the employment injury had ended and there remained only a condition pre-dating the accident. One of the members of the Commission talked with the claimant about the effect of the settlement. He knowingly signed the application for a compromise settlement, and the agreement, with full cognizance of its import. The Commission reviewed in detail the petition for settlement, and approved it. Appellant failed to show any fraud by appellees or unfair advantage *714 by them. He knew what he was doing. Hence the Commission was manifestly correct in refusing to set aside its order of approval and the compromise.'
The language of the Supreme Court in the above cited case is applicable to the factual situation presented in the cause now before the Commission. Further, as stated in Dunn, Mississippi Workmen's Compensation, 2d ed. (1966) Section 339:
`The difference in character of an approved compromise settlement, as distinguished from a commuted lump sum payment, has been emphasized and it has been intimated, although not expressly decided, that the compromise settlement may not be reviewed or vacated, at least in the absence of a showing of fraud upon or the taking of an unfair advantage of the claimant in connection therewith.' (Emphasis added).
In Larson, Workmen's Compensation, Section 81.51 (1976), the general rule with regard to reopening compromise lump sum settlements is stated as follows:
`Awards and settlements may not be disturbed except upon a showing that they were procured by fraud. This remedy may be based on either specific provisions of the Compensation Act or upon the general power of the courts to set aside judgments obtained by fraud.
`Ignorance or misunderstanding on the claimant's part will not in itself, however, justify reopening a settlement or award, if the employer had nothing to do with inducing the claimant's misapprehension. So, when the claimant alleges that he belatedly discovered that he might have a claim under a different statute, or when he says that he was incapable of understanding the legal implications of the agreement he signed, reopening will not be granted in the absence of fraud or insanity.' (Emphasis added).
... In the instant case, no finding was made by the Administrative Judge that the consideration paid the claimant was inadequate. Further, claimant offered no proof that he was still under a doctor's care on the date of the settlement and no proof that he did not know the extent of his injuries. Finally, no corroborating evidence was offered by the claimant to support his allegation that he did not understand that he was completely releasing his claim by accepting the employer-carrier's offer. In contrast the memorandum prepared by Mr. Gough, an impartial Commission employee, immediately after the claimant's interview establishes the following facts: (1) The claimant was aware that Dr. Smith had rated him 25% permanently partially disabled, with a 12 1/2% impairment attributable to a pre-existing condition; (2) the claimant understood his medical condition, stated that he believed himself to be disabled, but volunteered that he did intend to return to some type of work in the future; (3) the claimant was not under any medical treatment at the time of the settlement; (4) the claimant understood that accepting the settlement would completely close out his claim, and (5) despite his announced belief that he was disabled, the claimant urged approval of the settlement. Unlike Parker v. Howarth, 340 So.2d 434 (1976), the import of the settlement was explained to the claimant on three occasions, in addition to an investigation by the Administrative body charged with seeing that any settlement would be in his best interest. Although the claimant alleges illiteracy, he did sign the petition and other settlement papers, and none of the other witnesses who dealt with him during the course of the settlement recalled him making any statement that he could neither read nor write. It is obvious that the evidence offered in this case falls far short of the clear and convincing evidence offered in Parker.
"In considering the case law of other jurisdictions which have been faced with a similar issue, the Full Commission notes the decision of the Arkansas Supreme Court in Cook v. Brown, 246 Ark. 11, 436 S.W.2d 482 (1969). The Full Commission further notes that the Mississippi Workmen's Compensation Law was patterned after the Arkansas Act, and that many of the statutes are similar. In Cook, the plaintiff sought to set aside a compromise lump sum settlement by *715 alleging that he believed that the consideration he received was purely gratuitous, and that his claim would remain open after the settlement. Nearly one year after the Order was entered approving the settlement based upon a 15% permanent partial disability, the claimant petitioned that the settlement be set aside on the ground that he was incapable of understanding the legal ramifications relevant to the joint petition and thought his claim would remain open. The Supreme Court of Arkansas held that Cook's allegations were insufficient to mandate a reopening of the claim. Since the pleadings alleged neither fraud nor insanity, and the claimant's assertion of misunderstanding was contrary to the joint petition and the testimony given at the hearing, the Supreme Court denied claimant's petition to set aside the settlement. The same conclusion is reached in the case before this Commission.
"The testimony of Mrs. Sheppard, Mr. Gerity and Mr. Gough, supported by Mr. Gough's memorandum, and opposed only by the claimant's self-serving oral testimony, constitutes clear and sufficient evidence that the claimant understood the settlement and voluntarily decided to abandon his claim of total disability  a decision compatible with the 25% medical rating  and accept the employer-carrier's offer. To allow a settlement to be set aside on such evidence would be tantamount to allowing any claimant who becomes disenchanted with the amount he received to reopen his case by simply stating that he did not understand that he would receive no further benefits after the approval of the settlement.
"To give credence to claimant's testimony regarding the circumstances attendant to his approval of the settlement would be to totally reject the testimony of the other witnesses in this cause. The claimant has not demonstrated that the settlement was procured by fraud or undue advantage on the part of the employer. As such, his petition to reopen the claim must be, and is, denied and dismissed with prejudice.
"Therefore, for the reasons previously set forth, the Full Commission declines to accept the findings of the Administrative Judge and offers this opinion in lieu of the ORDER OF ADMINISTRATIVE JUDGE dated January 9, 1978.
"IT IS THEREFORE ORDERED AND ADJUDGED that the MOTION TO DISMISS be sustained." (Emphasis added).
This Court has said times without number that the Commission is the fact-finder and when it decision is supported by substantial evidence neither the circuit court (acting as an appellate court) nor this Court will disturb it.
In Roberts v. Junior Food Mart, 308 So.2d 232 (Miss. 1975), this Court said:
"The general rule is that the Workmen's Compensation Commission is the trier of facts, as well as the judge of the credibility of the witnesses, and a finding of the commission supported by substantial evidence should be affirmed by the circuit court. Miss. Code Ann. § 71-3-51 (1972); V. Dunn, Mississippi Workmen's Compensation §§ 286, 289 (2d ed. 1967); Fortune Furn. Co. v. Sullivan, 279 So.2d 644 (Miss. 1973); Hemphill Drug Co. v. Mann, 274 So.2d 117 (Miss. 1973). All questions of law and fact are reviewable by the circuit judge but he may not pass on the weight of the evidence where it is sufficient to support the commission's order. In reviewing a case, the court is required to look at all the evidence on both sides. Harpole Bros. Constr. Co. v. Parker, 253 So.2d 820 (Miss. 1971)."
308 So.2d at 234-35. (Emphasis added).
To the same effect is Shippers Express v. Chapman, 364 So.2d 1097 (Miss. 1978).
On the Petition to Reopen, the evidence, both oral and documentary, supporting the Commission's decision is not only substantial, it is overwhelming. Four reputable and credible witnesses testified one way; only the claimant testified the other way. His testimony is uncorroborated, even though his wife was with him when he received the $6500 settlement and the release was read to him word for word.
*716 The self-serving, uncorroborated testimony of Mason was not only refuted by the testimony of all four of the other witnesses, but also by his own statements over his own signature, under oath, on his Petition for Compromise Settlement; acknowledgments and statements over his own signature on Form B-31 "FINAL REPORT AND SETTLEMENT RECEIPT" and his promises, covenants and statements over his acknowledged signature on a comprehensive and detailed "Release of all Claims".
I am convinced by the overwhelming evidence adduced in this case that the Order of the circuit court should be reversed and the Order of the full Workmen's Compensation Commission reinstated.
SMITH, P.J., and WALKER and BROOM, JJ., join in this dissent.